## LEVY v. HARRIS.

(Circuit Court of Appeals, Third Circuit. June 8, 1904.)

No. 42.

1. PATENTS—INFRINGEMENT—CLAIMS FOR COMBINATION.

In a claim of a patent for a combination, all the elements which the patentee has specified must be regarded as material, and infringement cannot be found in a device in which one of such elements is omitted, unless an equivalent part is employed.

2. SAME—OMISSION OF PARTS—QUILL-GRINDING MACHINE.

The Levy patent, No. 664,564, for a machine for grinding quills of feathers, claim 1, includes as an element of the combination a spring, the ends of which bear on the suspended journal bearings of the presser-roll, and also "means for adjusting the tension of the said spring." Held, that such claim is not infringed by a machine which employs an equivalent spring, although of different form, but has no means for adjusting the tension of such spring.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 124 Fed. 69.

Horace Pettit, for appellant.

Walter C. Pusey and Joshua Pusey, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from the decree of the court below, in a suit in equity brought by the appellant, who was the complainant below, against appellee, defendant below, for infringement of letters patent No. 664,564, issued December 25, 1900,

to the appellant, for an improvement in a machine for grinding quills of feathers. The specifications of the patent state the object of the invention, and the details of the construction, so far as we are here concerned with the same, as follows:

"My invention relates to certain improvements in machines for grinding the quills of feathers; and the principal object of the same is to provide a machine which is simple in construction and which will rapidly grind the ribs of the quill of the feathers and remove all pith from the same, leaving only the bone portion of stems with the web or vanes running from each edge, thus rendering the said quill of the feathers soft and pliable and capable of withstanding considerable bending without the liability of breaking.

The invention consists in the construction and arrangement of the various parts, such as will be hereinafter fully set forth, and particularly pointed out in the claims made hereto.

In the accompanying drawings, Fig. 1 is a front view of a machine constructed in accordance with my invention. Fig. 2 is a side elevation of the

S. LEVY.
MACHINE FOR GRINDING QUILLS OF FEATHERS.
(Application filed Apr. 28 1900)

Fig. 1.

same. Fig. 3 is a central sectional elevation taken about on the line 3, 3, of Fig. 1, and Fig. 4 is a detail sectional view illustrating the yielding bearing of the presser-roll.

In carrying out my invention I provide a supporting-frame comprising the two side walls, a, b, connected at their lower ends to the base-plate, c. Each of the side walls, a, b, is made in two sections and hinged together at a', b', at their rear edges and having provided on their sides, near the forward edges, the projecting lugs, $a^2$, $a^3$, which are bolted together in the manner illustrated in Figs. 1 and 2.

Located about centrally in the side walls of the frame are bearings for the reception of the main driving-shaft, A, upon which is mounted the grinding-

roll, B, which is centrally located between the two frames. On the projecting end of driving-shaft, A, I provide a driving-pulley, A', which is connected by a suitable belt with the power-shaft.

Directly above the grinding-roll, B, is mounted a pressing-roll, C, which is of much smaller diameter than the roller, B, and is mounted in the adjustable journal-boxes, d, which are suspended in recesses, d', formed in the side walls of the frame. These boxes, d, are supported in a suspended position and adjusted by means of the threaded bolt, e, which enters a threaded aperture in the upper end of each box and passes through an opening, e', formed in the top plate, f, of the frame. The lock-nuts, e², e³, are provided above the plate, f, for supporting and adjusting the bolt, e. In each of the side frames of the machine I provide the vertical bolts, g, which support on their upper ends a crossbar, G, the said bolts, g, carrying jam-nuts for supporting and locking the crossbar. In the center of the said crossbar I provide a threaded opening adapted for the reception of the screw, h, which is provided with a shouldered lower end which fits into an aperture provided in the spring, H. The spring, H, is bowed, as illustrated, and bears at each end upon the journal-boxes, d, of the presser-roll, C, for the purpose of keeping the said presser-roll in constant contact with the grinding roll, or, in other words, for the purpose of

keeping the quill during the operation of the machine in close contact with the grinding-roll, while at the same time allowing the said presser-roll to yield upwardly. Each end of the spring, H, is provided with an elongated opening through which the bolts, e, pass. The tension of the spring, H, may be increased or diminished by adjusting the screw, h, carried by the bar, G.  *  *  *

In the operation of my machine the feathers are guided by the operator between the feed-rolls, J, K, which are driven rather slowly by means of the driving-pulley, T, carried by the shaft of the upper roller, J. This operation crimps or crushes the thick quill of the feather as it passes between the corrugated rolls and feeds the said quill between the grinding-roll, B, and the yieldingly-mounted presser-roll, C, the said presser-roll tending to keep the

*Fig. 3.*

(No Model.)

S. LEVY.
MACHINE FOR GRINDING QUILLS OF FEATHERS.
(Application filed Apr. 28, 1900.)

2 Sheets—Sheet 2

quill in close contact with the grinding-roll, which revolves very rapidly and grinds off the underside of the quill, removing everything, including the pith, with the exception of the bone which carries the web or vane of the feather."

Two claims are set forth in the patent, with the first of which only we have to do. It is as follows:

"(1) In a quill-grinding machine, the combination with the supporting frame, of a grinding-roll journaled in said frame, a presser-roll, C, bearings for said presser-roll suspended in the machine-frame so as to be capable of moving upwardly, means for adjusting said suspended bearings so as to regulate the distance between the presser-roll and the grinding-roll, a spring, H, adapted to bear at each end on the suspended journal-bearings, means for adjusting the tension of the said spring, and a pair of feeding and crushing rolls arranged ·in front of the grinding and presser rolls located so as to hold the quills while the grinding-roll is operating to remove the pithy material from the bone of the quill, substantially as described."

The validity of the patent in suit is not here in question. It was sustained by the learned judge of the court below, who, upon the first hearing, held that defendant's machine infringed the first claim of the patent. Upon a rehearing, however, the court was of opinion that defendant's machine did not infringe the patent in suit, for the reason that it did not have means for adjusting the tension of the spring referred to in claim 1, above quoted. The court below, in its opinion delivered after the rehearing, says:

"The patent claims as one of the elements in the combination, 'means for adjusting the tension of the said spring.' The specification shows that the particular means described by the inventor was the screw, h: 'The tension of the spring, H, may be increased or diminished by adjusting the screw, h, carried by the bar, G.' Neither this screw nor any equivalent device is to be found in the defendant's machine, but the tension of the springs is adjusted therein by the same means that is used for regulating the distance between the two rollers, namely, by the bolts, e. The defendants have therefore omitted entirely one element of the plaintiff's combination, and accordingly cannot be held to infringe. I think this position is sound, and is supported by the following authorities: Water Meter Co. v. Desper, 101 U. S. 332 [25 L. Ed. 1024]; Wright v. Yuengling, 155 U. S. 47 [15 Sup. Ct. 1, 39 L. Ed. 64]; Pittsburg Meter Co. v. Supply Co. (C. C. A., 3d Circuit) 109 Fed. 644 [48 C. C. A. 580]. As was said in the last-cited case: 'Nothing in the law of patents is better settled than the rule that a claim for a combination is not infringed, if any one of the described or specified elements is omitted without the substitution of any equivalent thereof.' "

We agree with what the learned judge has here said, and think that the complainant below is bound by the limitations imposed by his own language, as used in the first claim of the patent in suit. As said by Mr. Justice Bradley, in delivering the opinion of the Supreme Court, in Water Meter Co. v. Desper, supra:

"It may be observed, before concluding this opinion, that the courts of this country cannot always indulge the same latitude which is exercised by English judges in determining what parts of a machine are or are not material. Our law requires the patentee to specify particularly what he claims to be new, and if he claims a combination of certain elements or parts, we cannot declare that any one of these elements is immaterial. The patentee makes them all material by the restricted form of his claim. We can only decide whether any part omitted by an alleged infringer is supplied by some other device or instrumentality which is its equivalent."

A careful consideration of the device of the patent in suit, convinces us that the element described in the combination of claim 1, to wit, "a spring, H, adapted to bear at each end on the suspended journal bearings; means for adjusting the tension of said spring," was not only made material by its inclusion in the claim and specifications, but is in fact, a material element of the combination constituting the invention claimed. An inspection of the drawings and models submitted to the court, makes it perfectly manifest that the plate spring, H, the ends of which press upon the journal bearings on either side of the presser-roll in connection with the means for adjusting its pressure, furnished by the screw, h, furnishes a not unimportant part of the machine described in the patent. It must be borne in mind that the journal bearings, holding the ends of the shaft of the presser-roll, may be moved up or down by means of the bolts,

e, and the nuts, $e^2$ and $e^3$, as described in the specifications. This vertical movement enables the operator to regulate the distance between the presser-roll and the grinding-roll, and this regulation may be necessary by reason of the varying size of the materials to pass between the rolls. When the presser-roll has been thus raised or lowered to the distance required from the grinding-roll, it is held down, but yieldingly, by the ends of the plate spring, H. It is apparent, that if this plate spring is fixedly placed, its pressure at the ends on the journal bearings, and hence on the presser-roll, will be increased or diminished as the presser-roll is raised or lowered. It is most important, then, that there should be means for preserving just the pressure required, whether the presser-roll is raised or lowered. This can be accomplished by the means of adjustment provided in the screw, h, passing through the top bar of the frame, with its lower end resting on the middle of the arch of the plate spring, H. Thus, if the material to be treated requires that the presser-roll should be raised to a greater distance from the grinding-roll, in order to pass readily between the two, the raising of the presser-roll against the ends of the spring, H, would increase the pressure. It might, however, be desirable that the actual pressure should remain the same as before the spring is raised, and the means of adjustment supplied by the screw, h, would enable the original pressure to be maintained.

We now come to the consideration of the machine of the defendant below, alleged to infringe the patent in suit. It is admitted that the only difference between the combinations constituting the two machines, is in respect to this plate spring, H, and means for adjusting the same. By referring to the drawings of the defendant's machine, here—

"Complainants Exhibit Defendants Machine Sheet 1."

yielding rolls

feeding rolls. corrugated

DIAMOND WHEEL

MACHINE OWNED BY Phila. F. D. Co.

*Complainants Exhibit. Defendants Machine Sheet 2.*

*Phila. Feather Duster Co.*
*Machine*

*Lewis H. Van Dusen*
*NOTARY PUBLIC*
*Commission expires March 2, 1907.*

with reproduced, it will be seen that the journal bearings of the presser-roll may be raised or lowered in the sides of the frame by threaded bolts and nuts similar to the device for that purpose, in the patent in suit, and the distance between the presser-roll and the grinding-roll may be thus increased or diminished at will. As in the patent in suit, the journal bearings are *suspended* by the bolts referred to, but are free to be moved upwards. There is in each side of the defendant's machine, encircling the bolt, a coiled or helical spring, which furnishes a yielding pressure upon each end of the shaft of the presser-roll. It is apparent, that when the presser-roll is raised for any purpose, the compression of these coiled springs must increase the pressure upon the roll, and so conversely, when the presser-roll is lowered, so as to decrease the distance between it and the grinding-roll, the pressure of the helical spring is decreased. It follows that, in any given required position of the presser-roll, with reference to the grinding-roll, the pressure of these springs can neither be increased nor diminished. To increase the pressure, the presser-roll must be raised, thus abandoning the required position; and conversely, to decrease the pressure, the presser-roll must be lowered, which would again abandon the required position; or, if the two rolls were already so close together that no further approach could be made, no decrease in pressure could be obtained. It is thus seen that the defendant's machine lacks the means of adjusting the pressure of the spring, mentioned in claim 1 of the patent in suit, and particularly set forth by reference to letters H and h, both in the claim and specifications.

It is true, that the function of the two ends of the flat spring, in the machine of the patent in suit, is pressure upon the ends of the shaft of

the presser-roll, and it is also true, that when the presser-roll is raised, without more, this pressure is increased, and when it is lowered, it is decreased. But the essential element in this respect, of the patent in suit, i. e. means for adjusting the pressure, without either raising or lowering the presser-roll, distinguishes this combination from the defendant's device. The screw, h, passing through the transverse top bar of the frame, with its lower end on the top of the plate spring, can increase or diminish the pressure to any desired extent, no matter into what position the presser-roll is raised or lowered. In other words, in defendant's device, the raising or lowering of the presser-roll increases or diminishes the spring pressure, and there is no means for adjusting the pressure thus produced. If it be desirable to raise the presser-roll for any purpose, an increased pressure must be submitted to, for there is no means of restoring it by adjustment to its original energy. Then again, if the presser-roll in defendant's machine is at the distance required for the proper treatment of the feathers passing between them, and increased spring pressure should be desired, there is no way of obtaining it, except by raising the presser-roll, and thus destroying the desired relative distance of the two rolls from each other. On the other hand, in the machine of the patent in suit, when the presser-roll is at the desired distance from the grinding-roll, the pressure upon it may be increased or diminished without at all changing that distance.

The appellant contends that, inasmuch as the coiled springs of defendant's machine are compressed when the presser-roll is raised, and the tension of the springs thereby increased, and the opposite effect is produced when the roller is lowered, there is present in defendant's machine "a means for adjusting the tension of the springs," within the meaning of the claim. From what has been said, it seems to us clear, that this contention cannot be sustained. To support it would be doing violence to any accepted meaning of the word "adjusting." Adjustment of the tension is just as necessary after the raising or lowering of the presser-roll as before, and in defendant's machine, there is no means for such adjustment. It is not true, therefore, that in defendant's machine, a single element performs the functions of two elements specified in the first claim of complainant's patent.

We are of opinion, therefore, that this means of adjusting pressure, is a necessary element of the combination, as specified in the first claim of the patent in suit, and that the same, or any equivalent thereof, is not found in the alleged infringing machine of the defendant.

The decree of the court below is affirmed.