UNION PAPER BAG MACH. CO. et al. v. ADVANCE BAG CO.

(Circuit Court of Appeals, Sixth Circuit.   January 3, 1912.)

No. 2,141.

PATENTS (§ 328*)—INFRINGEMENT—PAPER BAG MACHINE.

> The Dulin patent, No. 578,550, for a paper bag machine, covers an invention the essential feature of which, as stated by the patentee, is "the rotating and coacting device for distending the blank to the diamond form,"· an essential element of such device as shown and described on each claim being a lower central gripper, and the patent is not infringed by the device of the Bartholomew patent, No. 736,673, which employs no lower central gripper and no mechanism which is an equivalent therefor.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

Suit in equity by the Union Paper Bag Machine Company and the Union Bag & Paper Company against the Advance Bag Company. Decree for defendant, and complainants appeal.   Affirmed.

The following is the opinion of the Circuit Court by Sater, District Judge:

Dulin's patent, No. 578,550, issued March 9, 1897, relates particularly to machinery to make what is known as the "square satchel-bottom bag," or bag made from a bellows-folded tube with a satchel bottom formed upon its end.   The object of his invention is particularly to provide machinery whereby such a bag may be made with greater speed than had theretofore been ·practicable and to simplify the machinery employed in the manufacture of such bags.   His invention, he declares, is entirely concerned with that portion of the paper bag machine by which a bellows-folded tube has its end spread out into the form known as the "diamond fold," which invention may be used with any convenient mechanism for forming the tubes or in folding the diamond in order to close the bottom of the bag.   These declarations of his acquire importance in considering his specification and claims of combination.

The bag planks passing from the feed rolls $A$ and $A'$ shown in his drawings are delivered between the rolls $B$ and $B'$.   As they advance toward the latter rolls, the lower central gripper $c$ closes down and engages the tab $U^2$, being the lower edge of the blank.   About that time the lifter $D$ is made to rise, lifting the blank so that the upper edge or tab $U^3$ will lie beneath the end of the gripper $C$, that it may be thereby more certainly caught by such gripper.   As the rolls revolve, $C$ is made to close down, and thus secures the upper edge of the blank.   As $B$ and $B'$ continue their rotation, the upper and lower edges of the blank being held by the grippers $C$ and $c$, respectively, the mouth or the bellows-folded blank opens, and, shortly before the rolls have reached approximately the position shown at Fig. 8, the side grippers $E$ $E$ and $e$ $e$ engage the corners of the blank and grip them upon the resilient plates $B^5$ $B^5$, shown on the rolls $B$ and $B'$.   The side grippers are held in this closed position upon the blank until their rotation fully distends the bellows fold and brings it to a substantially straight line, as indicated at $U^{10}$ in Fig. 18.   The upper grippers $E$ $E$ are then rapidly withdrawn.   The lower grippers are released later, as appears from Fig. 19.   The central grippers, which hold the upper and lower edges of the blank respectively, release their hold as $B$ and $B'$ revolve.   The upper part of the partially distended diamond is then held in place by a plate $K$ and the wing folders $M$.   These wing folders move in while the blank is distended, and engage the sides of the distended diamond before the side grippers release, and then rapidly close down, pressing the blank against $B$ and $B'$ and· the plates

N N. The lower central gripper c and the lower side grippers e e retain their hold upon the bag until it has been engaged between the rolls B' and L. The blank is then drawn down from between the rolls B and B' passing through the rolls O O' and P P' between the wing folders M M and the plates N N. These rolls or pressing devices break down the final lines of the diamond fold, and deliver the diamond folded blank to a bottom forming mechanism. The transverse creaser I J engages and creases the blank as it is engaged by the side grippers. Of the creasing mechanism the patent recites:

"While it is convenient to place this transverse creasing device upon the rolls B B', the essential feature of its use is that some creasing device should be provided which will form the transverse crease at the point referred to some time in advance of the distension of the tube in the formation of the diamond fold, and any creasing device may be used for this purpose."

The patentee states that the flattened faces $B^2$ $B^3$ on B and B' may be dispensed with. In that event, the grippers would work in connection with the rounded surface of the roll. He does not limit himself to a construction which necessarily retains the rolls B and B' as appears from the following:

"While I have shown and above described the central and side grippers, as well as the transverse creaser, as secured to the rolls B and B', it is obvious that these rolls, besides serving as supports for the grippers and creaser, serve merely as feed rolls; and it is also obvious that by providing any other convenient feeding apparatus the use of the rolls B B' as such could be dispensed with, the essential feature of my invention being the rotating and coacting device for distending the blank to the diamond form in the manner above described, and, as already stated, it is not essential that the transverse creaser should revolve on the same or approximately the same center or centers with the grippers, or, indeed, that it should be a revolving device at all."

The right reserved to dispense with the rolls B B' is in one respect hazily expressed. It makes a difference whether the words "as such" refer to rolls as the feeding apparatus, mentioned in the same sentence, as their antecedent, or to rolls as supports for the grippers and creaser and as serving as feeding devices, as stated in the preceding sentence. In view, however, of the conclusion reached, it is not necessary to determine the question thus suggested.

The claims alleged to be infringed are 1, 2, 3, 4, 5, and 7. They are all combination claims. The elements entering into the first are as follows:

(1) Rotating central upper gripper C, arranged to seize the top ply of the bag blank.

(2) Rotating lower central gripper c. This is arranged to seize the lower ply of the bag blank. These two grippers also operate to spread open the end of the blank.

(3) Rotating upper side grippers E E, which are so disposed as to enter the bellows fold of the blank and engage its upper ply.

(4) Rotating lower side grippers e e, which are so arranged as to enter the bellows fold of the blank and engage its lower ply. These four rotating side grippers spread out the blank in the plane of the bottom to be formed thereon.

(5) Mechanism for engaging and disengaging the grippers and the blank described.

(6) Mechanism for drawing the diamond-folded blank from the path of the grippers after they have released it.

The second claim adds to the first, "a transverse creaser arranged to crease the blank on the line about which the diamond is spread open and at a time prior to the distension of the diamond fold."

Claim 3 differs from the second only in that it provides that the transverse creaser shall be rotating.

The elements of claim 4 are as follows:

(1) Roll B, the upper diamond-forming roll.
(2) Roll B', the lower diamond-forming roll.
(3) The central gripper C on upper roll B.
(4) Central gripper c on lower roll B'.
(5) Side grippers E E on roll B.
(6) Side grippers e e on roll B'.
(7) Mechanism for operating the grippers.

Claim 5 adds to claim 4 "a creaser, arranged to crease the blank transversely on the line about which the diamond fold is opened, at a time prior to the distension of the diamond."

Claim 7 adds to claim 4 the element of the lifter D arranged to lift "the blank as it enters between the rolls so as to bring its upper ply to position to be engaged by the upper gripper."

The above statements as to the elements of the several claims of combination accord with the evidence offered by both parties.

The operation of respondent's machine is sufficiently stated as follows:

As the bellows-folded paper tube advances over the former 53, 54, the upper ply is punched by the notch cutter. It is then slitted above and beneath by a rotary slitter. It next passes between two feeding and creasing rolls, 6, 10, the creases made extending inwardly from both outer edges of the ply toward the middle. The feeding and cutting rolls 16, 24, sever both plies of the blank to near the outer edge of such plies from the extremes of the curved transverse notch first made in the upper ply, leaving, however, the marginal edges unsevered, and also the lower ply unsevered for a short distance at its middle. The side tucks of the partially severed tube are slightly spread by stationary side plates 63, whose purpose is to facilitate the operation of rotary cutters 41, 47, which completely sever the tucked edges of the blank. The tube is now wholly severed except a narrow portion or tang at the middle of the lower ply. Upturning flanges 57 on the former 55 separate the leading end of the plies in such a way that the upper ply is lifted against the upper diamond-forming roll to permit the entrance of the upper duplex central grippers. These flanges open and hold open the advanced end of the bag tube in a position for the upper side to be caught by the grippers on the upper folds of the gripping cylinder. As the diamond-forming rolls advance, the upper grippers, which are in the form of jaws or pincers, operating in slots within rollers, close upon the tab or end of the upper ply and hold it, while the roll rotates, until they are released by the operation of mechanism within the roll. As the rolls revolve, the end of the blank distends by the upper edge of the blank being pulled forward by the grippers and the lower edge being pulled downward by the unsevered portion or tang of the under ply. At the proper time, as the tube is distended, upper and lower side grippers or clamps distend the interior triangles of the diamond fold, and, when the diamond is completed, they are mechanically retracted. As the diamond is drawn down, its upper half is folded, as it descends, against the body of the bag blank. The upper central gripper, as it revolves, carries the upper end of the diamond in the rear of a plate 162, which sustains such upper end after it has been released from the gripper. The vibrating side-folding wings, 220, 220, after the diamond has been distended and disposed properly by the gripper and lower drawing roll, press inward against and flatten down the outer folds of the diamond to enable it better to retain its form. Movable wire fingers, 208, enter the opening end of the bag blank and spread out quickly against the wrinkled sides of the paper to assist in disposing the paper for the vertical side edges of the diamond. When they retract, the diamond slides downwardly past them. The bottom of the bag is carried down and passes between the feeding and cutting cylinders, 236, 242, by which the unsevered strip or tang between preceding and successive bags is severed, wholly detaching the preceding bag, which is then ready for the end-folding and pasting devices.

The respondent's device is constructed under the Bartholomew patent, No. 736,673, issued August 18, 1903. The individual bag is not severed from the succeeding portion of the bag tube until after the diamond-fold is made. In the Dulin method, the severing occurs before the bag reaches the feeding rolls B and B'.

About the time Dulin's patent issued he built one of his machines. The complainants subsequently acquired it. They removed from it the Dulin opening devices and substituted therefor those of the Stilwell machine, because some three or four old bag makers in complainant's factory "were eternally finding some little complaint about it," and it was therefore deemed "advisable, in the interest of the factory, to change back to the Stilwell opening device and let them run it." This machine, in a period of 10 years,

was in use two-thirds of the time. The complainants have manufactured but one machine with reference to the Dulin patent. To simplify it, to make it less liable to give out, and greatly to improve it over his original machine, modifications of the device described in his patent were introduced. It was subjected to a test run extending through quite a period. It developed a greater speed capacity than any previously patented paper bag machine, but its frequent stoppage was necessary on account of breaks and consequent repairs resulting therefrom. These are the only machines that have been constructed with reference to his patent. His device is mechanically operative, but whether in an entirely successful way, if constructed in accordance with his specification, is not clearly shown. Modified, as hereinbefore stated, it has been put to commercial use, but not extensively so. It has supplanted no previous machine. It did not constitute such an advance in the art of bag making that complainants deemed it advisable to discard their old machines to use Dulin's. On the contrary, in complainant's factory, of 156 machines 43 are of the Lorenz & Honiss type and 68 are of the Stilwell type. A patentee may, if he chooses, reserve his invention to his private use or even suppress it. That it has not gone into practical use does not prejudice his rights, but the fact that it has not gone into actual service may be used in construing and interpreting his patent. National Malleable Castings Co. v. Buckeye M. I. & C. Co., 171 Fed. 853, 862, 96 C. C. A. 515. There is no evidence that the Dulin machine has been preferably used when machine service has been required. His device, principally in a modified form, has been in actual, but not extensive, service. In view of the greater speed and other excellencies claimed for it, which, if they exist, would make its operation commercially more profitable than that of other machines, after making due allowance for the cost of discarding such other machines to be displaced by those made under the Dulin patent and for the natural reluctance of a manufacturer to suffer such loss, the want of a more extended use of it by those who control and own it and who are largely engaged in making bags is not without significance. The contention that Dulin's invention has made no appreciable impression on the practical art is not wholly without color.

In the reported cases of Union Paper Bag Machine Co. v. Waterbury (C. C.) 39 Fed. 389, decided in 1889, and New York Paper Bag Machine Co. v. Hollingsworth (C. C.) 48 Fed. 562, decided in 1891, the fact was recognized that paper bags were then produced with great cheapness in vast quantities, and were a universally known article, and that the art of paper bag making had commercially been well developed. The development in paper bag machinery, according to both experts and as shown by the prior art, has been toward rotary construction. The rotary idea found expression in the patents of Lorenz & Honiss, No. 333,647, issued January 5, 1886, and of Appel, No. 387,573, issued August 7, 1888. Stilwell's patent No. 417,846, issued December 17, 1889, shows both a rotary and a reciprocating movement. In Eastern Paper Bag Co. v. Continental Paper Bag Co. (C. C.) 142 Fed. 491, which involved the validity and construction of the Liddell patent, No. 558,969, issued April 28, 1896, it was said: "Aside from the cylinder and forming plate oscillating about its rear edge, everything in these claims (those there in question) is necessarily old in the arts. The cylinder also is found in patent No. 333,647, issued January 5, 1886, to Lorenz & Honiss, the central feature of which was said to be the continuously-rotating cylinder, but in lieu of a forming-plate, oscillating on its rear edge, the means used for making the 'diamond' fold were the blades of one or more pairs of box-folding mechanism."

But in that case it was found that prior to Liddell's patent the problem of a rotating cylinder with a mechanism which folds the paper bag of the kind in question had not been satisfactorily solved. The very pith of Liddell's invention was held to be in the combination of a rotary cylinder with means for operating the forming-plate in connection therewith, limited, however, to means which caused the plate to oscillate about its edge on the surface thereof. When the case reached the Supreme Court (210 U. S. 416, 28 Sup. Ct. 748, 52 L. Ed. 1122), Mr. Justice McKenna said that the Liddell patent was the first to show an "operative combination of a rotary cylinder and forming-plate oscillating thereon." The conclusion to be drawn from that

194 F.—9

case is that Liddell, the issuance of whose patent antedates that of Dulin more than ten months, satisfactorily wrought out the problem of a rotating cylinder with mechanism for folding the paper bag—a problem which others had solved, but not in a satisfactory way.

A comparison of the Liddell and Dulin devices is instructive. Liddell's patent shows two sets of side grippers and one roll or cylinder, on which are fastened two lower grippers. Dulin's shows two rotating rolls, each bearing a set of grippers. Liddell's upper central gripper *E'* is not affixed to a roll, as is Dulin's upper central gripper *C*, but to plate *E*, which oscillates instead of rotating. Liddell, however, did not limit himself to the device as shown in his specifications for controlling the movement of plate *E* relative to his cylinder, but says that the plate may be moved or operated by any other suitable means, and the return movement of the plate *E* is unimportant so long as it is secured in time to receive a new bag tube or section thereof. He thus provided for the substitution of an equivalent. May that equivalent be a roll? If plate *E* be mounted on a cylinder, would it not thereby be given a return movement by passing entirely around the circle instead of oscillating over an arc of it? The language of Liddell's specification suggests queries of this character, and the evidence of complainant's expert given in the Eastern Bag Company Case, as developed by his cross-examination in this case, points to their answer in the affirmative. Such answer would seem to be consonant with reason. In any event, a substitution of an equivalent would involve a change of mechanism, just as would the use of a substitute for the rolls *B* and *B'* in Dulin's device. The bag is opened up in the Liddell device by *c* and *E'*, much the same as by *C* and *c* in the Dulin patent. As the bag opens Liddell's side grippers play into the folds of the bag, and, when the bottom is completely formed, the bag is carried downward between rolls. All this is done also in the Dulin device. Liddell provides for two grippers on his roll, but explains that by reducing the size of the roll one of the grippers may be dispensed with. The mechanism of the two inventions which puts the bag-bottom forming device into operation differs, and the devices themselves operate consequently in a somewhat different manner.

Dulin was not the first to employ, for opening the mouth of the blank and forming the diamond fold, a central upper gripper and upper side grippers operating on the upper ply of the bellows-folded blank, in co-operation with a lower central gripper and lower side grippers for operating on the lower ply of the blank. He was the first to place two sets of grippers on rotary rolls, but Liddell in his above-mentioned patent and also in his patent No. 564,288 issued July 21, 1896, had shown a set of grippers on a rotating roll adapted to carry them, and with them the lower ply of the bag, downward in combination with a corresponding set of grippers mounted on an upward swinging element above the rolls adapted to carry them, and with them the upper ply, and, as above stated, had suggested that an equivalent might be used to effect the return of his plate *E* to receive a new section of the bag tube. The conjoint action of the grippers in the one device, as in the other, operates to open the mouth of the blank and form the diamond fold. Liddell materially advanced the rotary idea, and made a marked contribution to the art of paper bag making. But for him greater credit would have fallen to Dulin. Both owe much to the prior art. Even if prior inventors had not satisfactorily solved the problem, stated by Judge Putnam, of combining a rotating cylinder with mechanism which folds the peculiar bag here in question, their predecessors in the art, Stilwell and Lorenz & Honiss, had so far solved it, had so far covered the field of invention, that their machines, at the time of the taking of the evidence herein, still remained the practically operative means for supplying the demand excepting a small percentage for such bags. Dulin's machine, through the use of the upper roll *B*, carries the rotary idea somewhat further than Liddell's, as distinctly described in his specification, but on the record Liddell, not only as regards the intellectual origin of his mechanism, but also as to the issuing of his patent, is entitled to seniority. He so materially narrowed the field of invention, as regards the rotary idea, as to limit substantially the breadth of construction to be given to Dulin's patent.

The use of grippers long preceded the advent of Liddell and Dulin as inventors, but they each made an improvement as to their use. The Lorenz & Honiss patent, No. 337,966, March 16, 1886, shows a roller and an upper gripper, and four outer edge or tucker grippers. Stilwell's patent, No. 417,346, provides for but one central gripper and two side grippers, which latter are carried by a roller. Appel's device, No. 387,573, calls for two gripper cylinders with a gripper on each roll. It discloses means for spreading the plies of the bag tube, but no side grippers. Other instances might be cited, but a further review of the prior art will not be attempted. In the Eastern Paper Bag Company Case it was held that there were but two new elements in the Liddell patent—the cylinder and the forming-plate oscillating about its rear edge. The essential feature of Dulin's invention is the rotating and coacting device for distending the blank to the diamond form in the manner described in his specification. The similarity of purpose of the two inventors is apparent. As regards the application of the rotary idea, their inventions differ in degree and in the mechanism employed, but both obtained substantially the same result. Dulin's position, however, is not so favorable as that of Liddell because the latter preceded him in and occupied so much of the same particular field of invention.

In each of the claims in question Dulin has designated by letters of reference the grippers, described in his specification, which open and form the diamond fold. The only operation described in the patent, in so far as the grippers are concerned, involves the conjoint use of them all, and requires their form and construction to be that specifically shown by the descriptive parts of the patent. Each gripper is made a distinct element in each of his claims and therefore becomes material, and a court may not say, when a patentee has thus limited his claims, that any element is not material. When an invention is of a pioneer character, highly meritorious in its conception and usefulness, the mere use of letters will not operate to limit the inventor to the exact form of device shown. He is in such case entitled to a broad construction of his patent in view of the advance made by him in the art. But if the field of the invention was limited, and if he has made an improvement of a narrow character, just sufficient to constitute a patentable invention, he will be allowed nothing more than the specific description shown. Dulin's improvement is within a narrow scope, and by accurately and specifically describing by means of letters just what he has invented he limited himself to the advance which he in fact made. McCormick v. Aultman, 69 Fed. 371, 16 C. C. A. 259; Muller v. Lodge & Davis, 77 Fed. 621, 23 C. C. A. 357; Ross-Moyer Co. v. Randall, 104 Fed. 355, 359, 43 C. C. A. 578; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122.

Dulin's device involved invention. Considering the prior art, and especially as evidenced by the Liddell patents the slight practical use made of Dulin's invention, suggestive, as it is, of slight commercial value and of slight influence on the art, and the limitations imposed on its mode of operation by his specification and reference by letter in his claims of combination to certain of their elements, it cannot be regarded as a pioneer or as entitled to the liberality of treatment accorded to that comparatively rare class of inventions. Dulin never intended to dispense with any of his grippers, or that they should operate otherwise than set forth, and he should, therefore, be limited to the exact form of device shown in his patent, subject to such modifications as may result from the substitution for rolls B and B' of other mechanism producing rotary movement. His specification contains no intimation that such modification shall in any manner alter the operation or form of his bag-opening grippers. These, with the rotary movement, are the very pith of his invention. He preserves both, but the grippers which retain the bag and open it and shape its diamond fold are to remain unchanged, whatever may be the means of producing rotary motion.

Counsel have with ability and zeal discussed the differences in mechanism of the Dulin and Bartholomew patents, contending on the one hand that those differences are such as to warrant the issuing of Bartholomew's patent, and, on the other hand, that, as found in his device, they are mere attempts at evasion of the Dulin patent, and are at best but mere equivalents. There is

nothing in the record to indicate that Dulin's patent was cited by the patent office examiner as anticipating Bartholomew's. I do not think error was committed in granting Bartholomew's application. An extended discussion of the above-mentioned differences will not be profitable. But one of them will be noticed—a difference which constitutes an insurmountable barrier to the success of the complainants in this case.

In Dulin's machine, the diamond-forming rolls $B$ and $B'$ are also feed rolls. In respondent's machine they are not such. In Dulin's machine the middle portion of the advanced end of the bag tube is held against the descending surface of the lower roll by central gripper $c$, which gripper is an element of each of the claims alleged to be infringed. The respondent's machine has no such gripper, but in its operation the middle of the blank ply end remains connected with the rear end of the preceding blank. The drawing rolls engaging such preceding blank pull on the tang and thus draw forward and downward the blank on which the diamond fold is being made, the first bag blank, however, being guided downward by hand on its passage to the drawing rolls. A tang thus connecting bags in process of manufacture is shown in the Stilwell patent, No. 165,381, issued July 6, 1875, and Liddell's two patents, No. 197,870, issued December 4, 1877, and No. 558,969, issued April 28, 1896. In the last-named patent, the inventor, after suggesting that an unsevered portion of the bag tube may be utilized as a substitute for the nippers or grippers for the pulling of the tube in its onward course in the manufacturing process, expressly reserves the right to modify or change his mechanism for securing the several movements of its different parts, and does not confine himself to the details of construction shown in his specification. Dulin made no such reservation. The use of a paper tang to draw the bag tube through his mechanism was never within his contemplation. His specification and claims repel the idea of the abandonment of any one of either the central or side grippers. The lower central gripper $c$ is retained as a characteristic feature of his invention and as a distinct element in each of his claims excepting 11 and 12, and they relate to portions of the mechanism other than the central grippers or either of them. The gripper $c$ is a necessary part of his machine. If it were omitted, the machine would not be operative, because the blanks are severed before they reach the diamond-forming rolls and their retention by some device on the lower roll is requisite. They are fed forward by the rolls $B$ and $B'$, or by some substituted device, if such rolls may be dispensed with. There is no hint within the folds of the letters patent that the gripper $c$, or that any of the grippers, may be eliminated along with the rolls. The respondent's machine does not have any mechanical device as a substitute for such gripper, or any of the devices used by complainants to put it in operation. Its machine omits not only the gripper $c$, but the gripper-bar $c'$, against which it clamps the bag blank, the rock shaft $c^2$ which carries the gripper, the spring $c^3$ surrounding such shaft, the crank $c^4$ $c^5$ fastened to the shaft and carrying the antifriction roller $c^6$ and also the cam $3$, which co-operates with such roller to operate the rock shaft and gripper, and it adds nothing to supply the place of any of such omitted parts. The position of complainants, as stated by their counsel, is that the equivalent of the gripper $c$ is present in the organization of the respondent's machine, "because some part of the machine does actually hold the same part of the lower ply of the blank in the same place on the lower roll that it is held by the gripper, and does actually carry that part of the blank through the same path and in the same relation to the other coacting devices which is true of the lower central gripper of the Dulin machine." But the part of the machine which holds the lower part of the blank in the correspondingly same place on the lower roll as it is held in complainant's machine by the gripper $c$ would not so hold it, were it not for the unsevered tang, nor would it without such tang carry that part of the blank through the same path and in the same relation to the other coacting devices as is effected by the gripper $c$ of the Dulin machine. The tang is not a mechanism. It is a part of the material, of the bag tube, which the respondent's machine so manipulates as to hold the bag blank in proper position for treatment, and pulls it and the bag tube forward and downward.

The tang which connects the blanks in the respondent's machine does not constitute a part of the machine itself so as to become an element in the combination covered by the patent. In American Tobacco Co. v. Streat, 83 Fed. 700, 28 C. C. A. 18, decided by the Fourth Circuit Court of Appeals, a rolling apron was one of the elements of combination claimed by the plaintiff for his patented device. The defendant did not use such apron in his device, but instead thereof a leaf of tobacco, which was used as a binder in the manufacture of cigars on his machine, which leaf performed the same office as the apron in plaintiff's device. In speaking of such a state of facts the court said: "It follows, therefore, that, unless the machine used by the defendant employed a rolling apron or its mechanical equivalent in the manufacture of cigars or cheroots, there has been no infringement of the patent granted the complainant below. The evidence plainly shows that the defendant did not use an apron on any of the machines employed by it in its factory, that the machines used by it are without aprons, and are not used for making completed cheroots or cigars, but solely for the purpose of making 'bunches.' This is, in fact, admitted by the appellee; but it is claimed for him that the second wrapper used by the appellant is the mechanical equivalent of the apron described in the Streat patent, or, in fact, is the apron itself. In our opinion, the leaf of tobacco called the 'second binder' is not the mechanical equivalent of the rolling apron described in the Streat patent, which was evidently intended by the patentee to be a strip of strong paper—shown by the evidence to be, in practice, a strip of enameled cloth of sufficient strength to stand the strain of constant use—permanently fastened to the table, intended for continuous use, of greater strength than the tobacco leaf, the inherent weakness of which it was designed to obviate. But the second binder cannot be considered an element of the machine itself, as it is a part of the material used on the machine in the manufacture of the product offered for sale. We do not think that an article manufactured in a machine in the manner and for the purposes contemplated when the machine itself was made can be held to be a part of the machine which so produces it."

The same point was under consideration by the Supreme Court in Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 431, 14 Sup. Ct. 627, 630 (38 L. Ed. 500), and, while the court did not express an opinion upon it, the following language employed by Mr. Justice Brown is significant: "The first defense raises the question whether, when a machine is designed to manufacture, distribute, or serve out to users a certain article, the article so dealt with can be said to be a part of the combination of which the machine itself is another part. If this be so, then it would seem to follow that the log which is sawn in the mill; the wheat which is ground by the rollers; the pin which is produced by the patented machine; the paper which is folded and delivered by the printing press—may be claimed as an element of a combination of which the mechanism doing the work is another element. The motion of the hand necessary to turn the roll and withdraw the paper is analogous to the motive power which operates the machinery in the other instances."

It is a well-known rule that, if any one of the parts of a claim of a combination is formally omitted and is supplied by a mechanical equivalent performing the same office and producing the same result, the patent is infringed. It is equally well settled that the claim of a combination is not infringed, if any of the material parts of the combination are omitted and wholly dispensed with, without substituting therefor an equivalent for the omitted portion. Any inventor has a right to use any of the parts of another's combination if he does not use the whole of it. If he uses all the parts but one, and for that substitutes another mechanical structure substantially different in its construction and operation, but serving the same purpose, he is not guilty of infringement. The respondent having omitted one of the elements of the complainants' combination, and having substituted no mechanical equivalent for it, infringement does not exist. Cases illustrating the point under consideration are Ott v. Barth (C. C.) 32 Fed. 89; American School Furniture Co. v. Sauder Co. (C. C.) 113 Fed. 576; Levy v. Harris (C. C.) 124 Fed. 69, affirmed on appeal in 130 Fed. 711, 65 C. C. A. 113; Wicke v. Ostrum, 103 U. S. 461, 26 L. Ed. 409; Derby v. Thompson, 146 U. S. 476,

13 Sup. Ct. 181, 36 L. Ed. 1051. Walker on Patents, § 349, announces the rule thus: "Omission of one ingredient of a combination covered by any claim of a patent averts any charge of infringement based on that claim. A combination is an entirety. If one of its elements is omitted, the thing claimed disappears. Every part of the combination claimed is conclusively presumed to be material to the combination, and no evidence to the contrary is admissible in any case of alleged infringement. The patentee makes all the parts of a combination material, when he claims them in combination, and not separately."

Dulin may have been unfortunate in not seeing that he might dispense with the lower gripper c and use in lieu thereof the material on which his machine operated. The prior art told him that he might do this, if he saw fit, but he elected to take his patent with the lower gripper feature of his device as an essential element of his structure. Section 4888, R. S. (U. S. Comp. St. 1901, p. 3383), required that he file in the Patent Office a written description of his machine, and of the manner and process of constructing and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains or with which it is most nearly connected, to construct and use the same, and to explain not only its principles, but the best mode in which he has contemplated applying those principles, so as to distinguish it from other inventions and to particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery. The best and only mode as contemplated by him of applying the principles of his machine was by the use of lower gripper c. Whether gripper c is of the essence of the real invention or not is immaterial. The court is not at liberty by construction to expand the claim beyond the fair meaning of its terms or to contract it so as to eliminate any of its elements. The claim speaks for itself, and the court must take it as it finds it. The purpose of the section of the patent law above quoted is to relieve the courts of the duty of ascertaining the exact invention of the patentee by inference and conjecture derived from a laborious examination of previous inventions and a comparison of them with that claimed by the inventor. What Dulin patented was the particular means devised by him by which a particular result is attained. He left it open to any other inventor to accomplish the same result by other means. To constitute identity of invention, and therefore infringement by the respondent or its assignor, not only must the result attained be the same, but the elements combined in both Dulin's and the respondent's machines must be the same, and must be combined in the same way, so that each element shall perform the same function, provided, always, however, that differences alleged are not merely colorable according to the rule forbidding the use of known equivalents. The principles above stated find support in Pittsburgh Meter Co. v. Supply Co., 109 Fed. 644, 652, 48 C. C. A. 580; Keystone Co. v. Phœnix Iron Co., 95 U. S 274, 24 L. Ed. 344; Robinson on Patents, § 457; Kinzel v. Brick Co., 67 Fed. 926, 15 C. C. A. 82; Fay v. Cordesman, 109 U. S. 408, 420, 3 Sup. Ct. 236, 27 L. Ed. 979; Cimiotti Co. v. Fur Refining Co., 198 U. S. 399, 415, 25 Sup. Ct. 697, 49 L. Ed. 1100; Eames v. Godfrey, 1 Wall. 78, 17 L. Ed. 547; Water Meter Co. v. Desper, 101 U. S. 332, 25 L. Ed. 1024; Electric Signal Co. v. Hall Signal Co., 114 U. S. 87, 5 Sup. Ct. 1069, 29 L. Ed. 96; Brown v. Davis, 116 U. S. 237, 6 Sup. Ct. 379, 29 L. Ed. 659; Walker on Patents, §§ 186, 340, 349; Yale Lock Co. v. Sargent, 117 U. S. 373, 6 Sup. Ct. 931, 29 L. Ed. 950. Were Dulin's a pioneer invention, the mere fact that a device substituted for an omitted element in his claim of combination performs the same function as such omitted element, is not sufficient to establish infringement. Westinghouse v. Boyden, 170 U. S. 569, 18 Sup. Ct. 707, 42 L. Ed. 1136. Mr. Justice Brown in that case said: "But, after all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substituting the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value. To say that the patentee of a pioneer invention for a new mechanism is entitled to every mechanical device which produces the same result is to hold in other language that he is entitled to patent his function."

The conclusion is that the respondent's machine does not infringe. The bill is dismissed.

Francis T. Chambers (Arthur Stem and J. E. Hubbell, on the brief), for appellants.

Edward Rector, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. The issues in this suit are those usually found in a controversy touching the infringement of a patent. Admittedly the patent in suit is for a combination invention comprising appliances which are each old in the art of forming, through mechanism, the well-known diamond fold on the ends of bellows-folded paper bag blanks; each claim in suit being properly a combination claim. One of the defenses urged is that the alleged infringing machine entirely omits and dispenses with one of the essential elements of the patent in suit, without employing a mechanical equivalent for the omitted element. There is no dispute as to the omission, but an issue is sharply drawn as to substitution of a mechanical equivalent. The necessity of passing upon further issues made in the case will depend upon how this issue must be determined.

April 4, 1896, Charles E. Dulin made application for the grant of letters patent for the invention in suit, and on March 9, 1897, letters patent of the United States, No. 578,550, were issued. Through assignments, the Union Paper Bag Machine Company, one of the appellants, became the owner of the patent, and thereupon granted the Union Bag & Paper Company an exclusive right and license under the letters patent to use, manufacture, and sell paper bags made in accordance with the patent. The alleged infringing machine was constructed in substantial accordance with the Bartholomew patent granted August 18, 1903, under letters patent No. 736,673.

As regards the patent in suit, after stating in the specification that the invention relates to machinery for manufacturing paper bags and particularly the "square satchel-bottom bag," and that the object of the invention is to secure greater speed and simplicity in the manufacture of these bags, Dulin says that his description and drawings—

"* * * show that portion of a paper bag machine by which a bellows-folded tube has its end spread out into the form known as the 'diamond fold,' and I will here say that my present invention is entirely concerned with this part of the machine, which may be used with any convenient mechanism for forming the tubes and for folding the diamond in order to close the bottom of the bags."

He then proceeds with much detail and particularity to describe the machinery designed to accomplish his declared object, and then states:

"The features above referred to comprise those which embody the essential novelties of my invention."

This is followed by a description of devices which as he states do not differ essentially from those in common use with other machinery, although somewhat modified and changed to adapt them for use in

connection with his device. Thereupon he describes the operation of the machine as a whole. These descriptions refer by letters and numerals to drawings consisting of Fig. 1 to Fig. 20. The claims set out in the letters patent are 16 in number, and those in suit are claims 1, 2, 3, 4, 5, and 7. Claim 1 is:

"1. In a paper bag machine mechanism for spreading out the diamond fold on the end of a bellows-folded tube comprising rotating central grippers $C$ $c$ arranged to seize the top and bottom plies of the bellows-folded blank and spread it open at its end, rotating side grippers $E$ $e$ arranged to pass between the bellows folds of the bag, engage its corners and spread out the blank in the plane of the bottom to be formed thereon, mechanism for engaging and disengaging the grippers and the blank as described and mechanism for drawing the diamond-folded blanks from the path of the grippers after they have released it."

Claim 2 comprises the elements of claim 1, with the addition of 'a transverse creaser arranged to crease the blank on the line about which the diamond is spread open and at a time prior to the distention of the diamond fold." Claim 3 corresponds with claim 2, except that it describes the creaser as a *"rotating* transverse creaser arranged," etc. Claim 4 introduces rolls as among the devices forming the diamond:

"4. In a paper bag machine, mechanism for spreading out its diamond fold on the end of a bellows-folded tube consisting of rolls as $B$ and $B'$, between which the bellows-folded blanks are fed in combination with central grippers $C$ and $c$, one secured to each roll and arranged to seize the top and bottom plies of the blank as it enters between said rolls, side grippers as $E$ $E'$ and $e$ $e$, one pair attached to and rotating with each roll, said grippers being adapted to move in between the rolls and between the bellows folds of the blank and to clamp the blank to the faces of the rolls at its corners and mechanism for operating the grippers to cause them to engage and disengage the blank at proper times."

Claim 5 corresponds with claim 4 with the addition of "a creaser arranged to crease the blank transversely on the line about which the diamond fold is opened at a time prior to the distention of the diamond." Claim 7 is like claim 4, except that it introduces "a lifter as $D$ arranged to lift the blank as it enters between the rolls so as to bring its upper ply to position to be engaged by the upper gripper." It is stated in the specification in substance that a dual object is accomplished by the rolls $B$ and $B'$ in that they serve as supports for the grippers and creaser and also as feed rolls, and that other convenient feeding apparatus might be provided in their stead; but it is stated, further, that:

"The essential feature of my invention being the rotating and coacting device for distending the blank to the diamond form in the manner above described."

As it seems to us, no study of the specification and claims in connection with the drawings contained in the letters patent in suit can fail to reveal the distinctive character and the importance to the Dulin machine of the lower central gripper $c$. It forms part of each of the six claims in suit, not to speak of the number of times it is mentioned and made to appear in the specification and drawings; and, further, special mechanism is obviously necessary, and it is both de-

scribed and displayed, for operating the lower central gripper. The experts seem to be in harmony as to the necessity of both central grippers, the lower as well as the upper. They are part of the group constituting the "rotating and coacting device for distending the blank to the diamond form;" and this, as we have seen, is declared by the inventor to be "the essential feature" of his invention.

The lower central gripper is used for the further purpose of drawing the blank downward until the diamond fold is gripped between rolls $B'$ and $L$, when the blank is released from the gripper and carried thence to the pairs of rolls $O$ and $O'$ and $P$ and $P'$, which lie lower down in the machine. True, complainant's expert testified that the grippers could be replaced by other (undescribed) devices; but we cannot discover that Dulin ever intended to dispense with any of the grippers or to have them operated except in accordance with his painstaking description. Indeed, to do so would be inconsistent with the very scheme of his invention. If rolls $B$ and $B'$ were dispensed with, as suggested by Dulin, still some other means for operating his rotating and coacting device for distending the blank to the diamond form would, so far as appears, have to be devised and equipped with the grippers, the lower as well as the upper; for otherwise his device would not produce the desired diamond form.

The necessity to employ the lower central gripper in the Dulin machine to effect the downward movement of the blank arises from the fact that each blank is severed from the one in advance of it prior to the formation of the diamond fold. This severance of the blanks marks the point of departure between the two machines in dispute. The defendant does not sever the blanks, and, on the contrary, preserves them in series by central tab connections, called tangs, at their ends, until later in the process of manufacture; and so does not need or use the lower central gripper to effect the downward movement mentioned, nor to hold the lower ply against the face of the roll during the distention. It is true that in the cross-examination of one of defendant's experts it was conceded that the blanks pass along the same path over the lower rollers of the respective machines in question; but he thereupon stated:

"In the Dulin machine each blank is carried forward (after the diamond fold is formed upon it) by the drawing rolls. In defendant's machine each blank is carried forward (after the diamond fold is formed upon it) by the drawing rolls. In the use of the Dulin machine each blank is severed from the one in advance of it before the formation of its diamond fold, and it is therefore necessary to mount a central gripper on the lower roll for the purpose of drawing downward the center of the edge of the lower ply of the blank; the drawing rolls being unable to perform that function. In the operation of defendant's machine the tab-connection method is followed, and each blank drawn forward by the drawing rolls serves to draw downward the center of the edge of the lower ply of the succeeding blank. There is therefore no lower central gripper in this machine, nor is there anything substituted for it."

The learned judge of the court below considered this difference as amounting, under the authorities, to a distinction sufficient to relieve the defendant from the charge of infringement. Counsel disclaim having said that the connecting tang uniting the blanks was an equiva-

lent for the central gripper of the lower roll in the Dulin machine. Their contention is that the mechanism in defendant's machine, which, acting through the tang, holds the center of the blank on the lower roll, just as does the central gripper of the patent in suit and with the same results on the work of the combination, is not only an equivalent, but a well-known equivalent, for the central gripper.

This argument seems to us to overlook the real constitution of the elements "central grippers," which, of course, include lower central gripper $c$, as disclosed by the claims. These elements are named in substantially the same language in each of the claims in suit, and in each claim they must be the same thing. We find, however, that some of the claims calling for these elements also call for another additional element: "Mechanism for drawing the diamond-folded blanks from the path of the grippers after they have released it." This mechanism, the feeding or drawing rolls, pulls the completed fold away from the point of release from lower central gripper $c$ and passes it on through the machine. The mechanism in defendant's machine, which is claimed to be an equivalent of the lower central gripper, is the same group of feeding and drawing rolls which draws the completed fold away. These two elements, being separately called for in the claims, cannot be the same thing, and the drawing rolls in defendant's machine being in practically the same form as in the patented machine cannot be both the central lower gripper and the mechanism for drawing a fold away from it. It follows that the connected series of blanks passing through defendant's machine is the only substitute there to be found for the lower central gripper and its operating devices in the Dulin machine. The Dulin machine could not form the diamond fold, but for the lower central gripper; nor could defendant's machine, but for the tab-connections preserved in its machine until the blanks reach the drawing rolls *236* and *242*. Thus, an element of the patent in suit is not only omitted from the alleged infringing machine, but no *mechanism* is put in its place. The most that can be said is that rolls *236* and *242* fairly correspond with rolls of the Dulin machine; but this only accentuates the lack of substitution of mechanism for the omitted mechanism.

It is settled that a claim for a combination is not infringed if any one of the elements is omitted without substitution of an equivalent. As Mr. Justice Day said in Cimiotti Unhairing Co. v. Am. Fur. Ref. Co., 198 U. S. 399, 410, 25 Sup. Ct. 697, 702 (49 L. Ed. 1100):

"In making his claim the inventor is at liberty to choose his own form of expression, and, while the courts may construe the same in view of the specifications and the state of the art, they may not add to or detract from the claim. And it is equally true that as the inventor is required to enumerate the elements of his claim, no one is an infringer of a combination claim unless he uses all the elements thereof."

See, also, Duncan v. Cincinnati Butchers' Supply Co., 171 Fed. 656, 665, 96 C. C. A. 400 (C. C. A. 6th Cir.) ; Ott v. Barth (C. C.) 32 Fed. 89, 91; Pittsburgh Meter Co. v. Pittsburgh Supply Co., 109 Fed. 644, 651, 48 C. C. A. 580 (C. C. A. 3d Cir.); Rowell v. Lindsay, 113 U. S. 97, 102, 5 Sup. Ct. 507, 28 L. Ed. 906; Levy v. Harris, 130 Fed. 711, 715, 65 C. C. A. 113 (C. C. A. 3d Cir.).

Counsel for complainant rightly concede that the use of the tang in question in place of the lower central gripper does not amount to the substitution of a mechanical equivalent; for that would be to treat the paper made into diamond folds by the machine, as an element of the patent. See Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, and language of Justice Brown at page 431, 14 Sup. Ct. 627, 38 L. Ed. 500, although obiter; American Tobacco Co. v. Streat, 83 Fed. 700, 705, 28 C. C. A. 18 (C. C. A. 4th Cir.).

In the view we have taken of the case, it is plainly unnecessary to consider either the patentability of the Dulin machine or the degree of breadth that should be accorded to it; for, conceding without deciding the question of invention, even if the patent could be said to be a pioneer (and it is in vain to insist that it is), the charge of infringement could not, in our judgment, be sustained. As Justice Brown said in Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 569, 18 Sup. Ct. 707, 723 (42 L. Ed. 1136):

"But, after all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value."

The decree of the court below must be affirmed, with costs.