NATIONAL CASH REGISTER CO. v. GRATIGNY.

GRATIGNY v. NATIONAL CASH REGISTER CO.

(Circuit Court of Appeals, Sixth Circuit. May 5, 1914.)

Nos. 2388, 2435.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—CASH REGISTER.
    The Ehrlich patent, No. 560,089, for a cash register, claim 18, *held* void, as too broad, in view of the prior art; also, construed as to claims 1, 2, 19, 24, 25, 36, and 37, *held* not infringed.

2. PATENTS (§ 246*)—INFRINGEMENT—COMBINATION CLAIMS.
    A claim for a combination is not infringed, if any one of the elements is omitted without substitution of an equivalent.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 387; Dec. Dig. § 246.*]

3. PATENTS (§ 165*)—CONSTRUCTION—LIMITATION OF CLAIMS.
    An element should not be read into a claim for the purpose of narrowing it, as against an objection that it is too broad in view of the prior art.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

4. PATENTS (§ 312*)—SUIT FOR INFRINGEMENT—EVIDENCE—UNCERTIFIED COPIES OF PATENTS.
    Uncertified copies of patents are not admissible in evidence in an infringement suit, and where introduced in the examination of witnesses may properly be stricken from the record.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. § 312.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. PATENTS (§ 325*)—SUIT FOR INFRINGEMENT—COSTS.

In an infringement suit, where a party extends the cross-examination of his adversary's witnesses beyond legitimate limits, the court may properly take such fact into account in taxing the costs.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 607–612; Dec. Dig. § 325.*]

Appeals from the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

Suit in equity by the National Cash Register Company against Jerome T. Gratigny. From the decree, both parties appeal. Affirmed.

Edward Rector, of Chicago, Ill., for complainant.

P. A. Staley and Border Bowman, both of Springfield, Ohio, for defendant.

Before KNAPPEN and DENISON, Circuit Judges, and DAY, District Judge.

KNAPPEN, Circuit Judge. Suit for infringement of Ehrlich patent, No. 560,089, May 12, 1896, for cash register, indicator, and checkprinter. Defendant is sued as a user of a Hallwood cash register. The District Court dismissed the bill for lack of infringement, and appeal is taken from that decree. Defendant also appeals from an order hereafter referred to.

[1] The Ehrlich device, broadly speaking (and disregarding the registering and printing mechanism), embraces an oscillatory rotatable horizontal cylinder operated by a "motor" in the form of a coiled spring and connecting shaft. This cylinder operates by means of a bevel-gear, an upright shaft having upon its upper end a sleeve carrying an indicator wheel; the wheel and shaft being capable of turning independently of each other. The cylinder is held in initial position by a detent. The indicator bears numbers on its periphery, each number corresponding to a key in the form of a push-pin upon the face of the lower part of the machine-frame. The depression of any one of this series of keys directly releases the motor-detent and allows the cylinder to turn under the influence of the motor-spring, until arrested by one of a series of stop-pins upon the cylinder surface contacting with the end of the depressed push-pin. The movement of the cylinder also produces a rotation of the indicator sufficient to bring into view, through an opening in the machine case, the number corresponding to the key depressed. The same operation of any one of this series of keys releases the cash drawer, the closing of which rewinds the motor-spring, restores the motor and cylinder to their original position, releases the previously depressed key, and restores it to its normal position for another operation. The claims sued upon are Nos. 1, 2, 18, 19, 24, 25, 36, and 37. Claim 1 is as follows:

"1. The combination of a motor, an oscillatory member actuated thereby, means for holding the motor in check, a series of keys controlling said means and co-operating with the oscillatory member to arrest the latter at different points [whereby upon operating any key in the series the motor will be released and the oscillatory member moved by it until arrested by the operated key] and (means for restoring said member to initial position and winding up the motor)."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Claim 2 differs from claim 1 in omitting the bracketed portion above, and in place of the words in parenthesis substituting "a money drawer and connections for restoring the oscillatory member to initial position and winding up the motor." Claims 19, 36, and 37 each include a detent for holding the motor in check, and a series of keys controlling the detent.

Defendant's machine differs from the Ehrlich device in several respects. Instead of one indicator, it has four indicators, each of which is actuated by its own separate mechanism and bears its own series of figures; each number on which is represented by its own separate key, likewise in the form of a push-pin. The actuating mechanism for each indicator embraces a notched or shouldered segment (oscillating) mounted on a horizontal shaft. The motor consists of a weighted frame attached to the shaft and operated by gravity, slightly aided by coiled springs. The depression of any one of a series of push-keys releases a hook from engagement with a projection on the lower part of the segment, and interposes the appropriate pin in the path of one of the shoulders thereon. It has, however, no effect upon releasing the motor and does not advance the segment which actuates the indicator. Such release is effected only by depressing a key entirely separate and independent from the series of keys referred to, whereby a detent which holds the drawer in its closed position is released, the motor being thereby released and advancing the segment until its shoulder contacts with the appropriate push-pin. The closing of the money drawer winds up, or restores, the motor and withdraws the push-key from its depressed position. It will thus be seen that defendant's machine entirely lacks the element of a motor-detent controlled by a series of keys, the depression of any one of which moves the indicator, as the direct result of the releasing of the motor-detent. This feature is one of the prominent elements of the Ehrlich device. The specification says:

"The motive power of the machine is a coiled spring, which is wound up by the closing of the money-drawer. This motor is held in check by a detent which is controlled by a series of keys. When any one of said keys is operated, the motor is released and moves the indicator, register, and type-wheel distances corresponding to the value of such key to indicate and register such value and set the type-wheel to print it."

[2] This method of key control is not given as a preferred form. A claim for combination is not infringed if any one of the elements is omitted without substitution of an equivalent. Cimiotti Unhairing Co. v. Amer. Fur. Ref. Co., 198 U. S. 399, 410, 25 Sup. Ct. 697, 49 L. Ed. 1100; Union Paper Bag Mach. Co. v. Advance Bag Co. (C. C. A. 6th Cir.) 194 Fed. 126, 138, 114 C. C. A. 204. Whether defendant's machine infringes the claims under consideration thus depends on whether the detent-releasing mechanism of defendant's machine is the equivalent of Ehrlich's mechanism; and this question in turn depends upon the state of the art prior to Ehrlich, and the advance made by him. Paper Bag Patent Case, 210 U. S. 405, 415, 28 Sup. Ct. 748, 52 L. Ed. 1122; W. W. Sly Mfg. Co. v. Russell (C. C. A. 6th Cir.) 189 Fed. 61, 67, 110 C. C. A. 625.

In our opinion, Ehrlich's advance was not such as to make defendant's detent-mechanism the equivalent of Ehrlich's. The latter was not a pioneer in the cash-register art. The prior patents introduced by defendant were, by the decree below, stricken from the record because uncertified; but it appears by the testimony of one of complainant's experts that the device of one of the Longacre patents, which preceded Ehrlich's by about 9 years, contains elements severally answering to the names of all the members recited in claims 1, 2, 36, and 37 of the Ehrlich patent, although, the witness says, the Longacre patent "does not contain the same elements throughout, and does not contain the combination of elements" defined in claims 1 and 2 (and inferentially, in claims 36 and 37) of the Ehrlich patent. The witness admits, for example, that in the Longacre patent are found a motor, an oscillatory member actuated thereby, means for holding the motor in check, a series of keys controlling these means and co-operating with the oscillatory member to arrest the latter at definite points, so that upon operating any key in the series the motor is released and the oscillatory member moved until arrested by the operating key, as well as means for returning the member to its initial position and winding up the motor. He also concedes that the Longacre patent has a "duplication or multiplication of indicators, oscillatory members, and series of keys, in which respect it is followed by defendant's machine, while the Ehrlich shows only one set of these general devices and is of more limited capacity." While one of complainant's experts characterizes the Longacre indicator as reciprocating, he properly concedes that a reciprocating and an oscillating indicator are mechanical equivalents.

Claim 24 is as follows:

"24. The combination, in a cash-indicator, of an oscillatory indicator, a main motor-spring for turning it in one direction, a weaker spring for resetting it, which is put under tension when the indicator is moved by the main motor-spring, a series of keys for determining the movements of the indicator under the influence of the motor-spring, and means controlled by the keys for temporarily holding it in position to which it may be moved by the motor-spring, substantially as described."

Claim 25 differs in no respect material for present purposes, except that it includes "a money drawer and connections for winding up the motor-spring."

In Ehrlich's device the indicating mechanism was held in position from the time of a given sale (so as to show the amount thereof) until the next succeeding sale, by means of a pawl engaging the teeth of the ratchet wheel upon the sleeve of the upright shaft before referred to. Upon the operation of any one of the series of keys, to make a different indication, the indicator was released and returned to its zero position, from which it was again moved to a position making the new indication. In defendant's machine the indicator is held in position, following a given sale, by means of a detent which, by the closing of the money drawer, was made to engage the teeth of a rackbar, whose upper end engages a pinion wheel on the indicator shaft. The depressing of one or more of the series of indicator keys, in connection with a new indication, has no effect in releasing the indicator-holding means. Such release is effected only by the op-

eration of the gravity and spring motor operating the segment before mentioned, following the actuating of such motor by the depression of a separate and independent key releasing the money drawer and motor-detent. If, therefore, we are right in the view that claims 1, 2, 19, 36, and 37 are not infringed, because of the lack of direct motor control through the operation of one or more of a series of indicator keys, it is even more clear that defendant's indicator-holding mechanism does not infringe the device disclosed in claims 24 and 25 of the Ehrlich patent.

· Claim 18 is as follows:

"18. In a cash-indicator, having a money-drawer, the combination of an oscillatory indicator, a motor for actuating the same, connections with the drawer for winding up the motor, and a series of keys for determining the movements of the indicator when under the influence of the motor, substantially as described."

It will be noted that this claim not only omits the reference to a key-controlled detent, but also (as is true of some of the other claims) is confined to the indicating mechanism. It will also be noted that, unlike some of the other claims we have considered, claim 18 wholly omits provision for holding the indicator in any given position, for its release, or for giving it reverse rotation. So far as concerns Ehrlich's indicating mechanism, its only novelty lies in the feature that the indicator will stay where it is, unaffected by the winding up of the motor, because the indicator is separable from the cylinder actuated by the motor. In other words, in view of the prior art, and especially Longacre, there was no novelty in an indicating mechanism comprising merely an oscillatory indicator, its actuating motor wound up by the money drawer, and keys for determining the movements of the indicator.

[3] Unless, therefore, as complainant contends should be done, the provision referred to can be read into the claim as one of its elements, it is too broad to be valid. We think the case is within the general rule that an element should not be read into a claim for the purpose of narrowing it, and thus making it valid as against an objection that it is too broad in view of the prior art. McCarty v. Railroad Co., 160 U. S. 110, 116, 16 Sup. Ct. 240, 40 L. Ed. 358; Stearns & Co. v. Russell (C. C. A. 6th Cir.) 85 Fed. 218, 224, 29 C. C. A. 121; Scaife v. Falls City Woolen Mills Co. (C. C. A. 6th Cir.) 209 Fed. 210, 213, 126 C. C. A. 304.

It follows from these views that the District Court rightly dismissed the bill of complaint.

Defendant's appeal is from an order made upon final hearing (a) striking from the record, because uncertified, certain copies of letters patent introduced by defendant upon cross-examination of complainant's witness, together with a sketch based upon and relating to two of said patent exhibits; and (b) awarding to complainant one-third of the examiner's fees for taking complainant's depositions and one-third of the cost of printing the record.

[4, 5] The patent copies, being uncertified, were not legally admissible. It would have been entirely proper to give defendant opportunity to replace these copies by others duly authenticated. But such

request was not made, and the motion to strike out was pending for several years. We think the court was warranted, under the circumstances, in excluding the copies; and the same considerations apply to the exclusion of the sketch. Defendant produced no witnesses; his examination of complainant's witnesses went to a considerable extent beyond the legitimate exercise of cross-examination as recognized in the federal courts. It was proper for the court to take this fact into account in the apportionment of the costs of taking testimony; and we cannot say that the award of one-third was excessive.

A rule of court seems to have provided for the printing of the record and the taxation of such expense in the costs, either upon stipulation or by order of the court. The record does not purport to be complete; and in the absence of affirmative evidence to the contrary, we should assume that the printing was authorized. This item is thus governed by the same considerations which apply to the taking of the testimony.

The order in question is accordingly affirmed, with costs, as is the decree dismissing complainant's bill.