PITTSBURG METER CO. v. PITTSBURG SUPPLY CO., Limited.

(Circuit Court of Appeals, Third Circuit. July 1, 1901.)

No. 23.

1. PATENTS — INFRINGEMENT OF COMBINATION—NONINTERCHANGEABILITY OF PARTS.

Upon the question of infringement of a patent for a combination by the substitution of an equivalent element, the fact that the substituted part could not be used in the patented combination, nor the part for which it was substituted in defendant's device, without a complete reorganization of the machine, tends strongly to negative infringement.

2. SAME—IDENTITY OF FUNCTION.

The fact that a defendant's machine effects the same result as that of complainant's patent is not determinative of infringement, but, to constitute infringement, the result must have been reached by substantially the same means.

3. SAME—CONSTRUCTION OF CLAIMS.

If the claim of a patent is not sufficiently broad to cover the real invention, the remedy is by a reissue. The courts cannot broaden the claim by construction beyond the fair meaning of its terms.

4. SAME—INFRINGEMENT—PROPORTIONAL GAS METERS.

The Youngs patent, No. 473,544, for a proportional meter for measuring gas, which does not cover any of the separate parts, but the combination as a whole, has for one of the elements of the combination a weighted diaphragm for operating and controlling the proportional valve by means of the difference in pressure on its opposite sides; and the patent is not infringed by a meter which dispenses with such diaphragm and the mechanism connecting it with the valve, and employs instead a poppet valve on a vertical stem, which is operated by the direct pressure of the gas upon a disk attached to the lower end.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

The following is the opinion of BUFFINGTON, District Judge, in the court below:

This suit is for alleged infringement of letters patent No. 473,544, granted to F. E. Youngs on April 26, 1892, for an improvement in proportional meters. The ordinary gas meter consists of a series of bellows moved back and forth by the gas passing through it, and connected by gearing with an index moving on a dial. Each gas unit passing is thus indexed by dial movement. To measure the vast volume of gas now used by manufacturing plants would require a meter of undue size and prohibitory price. Hence the use of proportional meters, in which the gas is divided into two streams of fixed proportion, say 1 to 100, and only the smaller one is metered. It is obvious that, to obtain accurate measurement, the relative proportions of the two streams to each other must be maintained. This relative proportion is disturbed by metering; for, while such metering does not change the quantity of gas passing, it reduces pressure by a degree equal to the pressure used to drive the meter mechanism. Such relative proportion is also affected by many other causes. For example, the mechanical working of the meter mechanism as affected by friction, wear, dirt in bearings, congealing of oils, change of temperature, are factors which may change the initial relative proportion. As these changes are, in their nature, uncertain, and as each variation is multiplied by the proportion, in the ratio cited above, 100 times, it will be apparent that the meter would be wholly unreliable. This difficulty the present patentee avoids by maintaining in an intermediate chamber, styled the "Meter-Delivery Chamber," a pressure of a fixed relative difference from the inlet and outlet pressures. This he does by the use of a weighted diaphragm, placed between the inlet chamber and the meter-delivery chamber, operating a valve placed between the tally meter and the meter-delivery chamber in such a manner as to cause a constant fall or difference of pressure between the inlet chamber and the meter-delivery chamber. The mechanism will be readily understood from the accompanying sketch, in which B is the tally meter, F the meter-delivery

Youngs' Patent in Suit, No. 473,544, Apr. 26, 1892.

chamber, N the inlet, and L the outlet, chamber. U is a weighted diaphragm between the inlet and meter-delivery chambers, and W the valve controlled by it. Youngs was not the first to devise a proportional meter. The maintaining of a fixed relative proportion between the inlet and outlet chambers by the use of a proportional valve and a diaphragm acted upon on one side by outlet and on the other by inlet gas pressure was old. The alleged novelty consisted in using, in combination with these known devices, the new element of an intermediate chamber with a weighted diaphragm governing the meter-delivery intake valve as noted above. The functional essentials of the several diaphragms and valves are thus specified in the patent: "The weight placed on the diaphragm, G, is proportioned to the area of the diaphragm, so as to cause the pressure in the chamber L to be less than in the one N by a certain definite amount. * * * The greater portion of the bottom of this chamber, F, is formed by the lower weighted diaphragm, U, to which the valve-lever, V, is connected. The valve, W, which is secured to this lever, regulates the flow of the gas from the tally meter, B, into the chamber, F. The pressure of the gas in the chamber, N, against the under side of the weighted diaphragm, U, serves to operate the lever, V, so that the valve, W, will only allow the gas passing from the tally meter to enter the chamber, F, with a certain regulated degree of pressure; and the pressure in this chamber, F, is a certain regulated amount less than the pressure in the chamber, N, without regard to the volume of the gas passing through the meter. The weights on the diaphragms, G, U, are so proportioned that the differences in pressure between the chamber, N, and chamber, L, are always a certain amount greater than the difference in pressure between the chamber, N, and chamber, F."

We next inquire whether these elements are found in combination in the prior art. An examination of the patent to Moore (No. 340,450) shows no such intermediate meter-delivery chamber, intake valve, or governing diaphragm as Youngs', and it is conceded it did not overcome the difficulties arising from variable tally-meter resistance. The patent to Nash (No. 336,147) for water meters is cited as overcoming such difficulty. Assuming, for present purposes, the arts of gas and water metering are kindred, the problems presented are the same, and that Nash overcame the difficulties incident to variable tally-meter resistance, an examination of that patent shows a different functional structure from that of Youngs. In Youngs' there is an opening "between the meter-delivery chamber and the outlet chamber, and operated by the weighted diaphragm, G." Not only is no such valve found in Nash's meter, but an open port, m, is shown. It is obvious that, if such an open port were placed in Youngs' meter-delivery chamber, instead of the valve, s, actuated by the weighted diaphragm, it would be impossible to preserve "a constant difference or fall of pressure * * * between the meter-delivery and outlet chambers." Since neither of these devices has the mechanism or the functional capacity of the Youngs device, it would seem that the alleged combination of the two in the Nash patent, No. 336,147, did not disclose the device of Youngs, to wit, an opening placed between the meter-delivery chamber and the outlet chamber, and operated by a weighted diaphragm in such a manner as to cause a constant difference or fall of pressure between the inlet and outlet chambers and between the meter-delivery and outlet chambers. The earlier patent of Youngs, No. 412,824, also shows a different combination from his present device, and can in no sense be held an anticipation. It is sufficient to note the presence in such earlier patent of an intermediate or detention chamber between the main flow from the inlet to the outlet chambers,—a feature not found in the second device,—and the absence of the valve and its controlled mechanism between the tally meter and the meter-delivery chamber. The device shown in the Westinghouse patent, No. 347,673, is not an anticipation of Youngs'. While both were intended to measure proportional streams, and to that extent were akin, yet the problems they sought to solve were essentially different. In the Westinghouse device the metered stream was delivered from the meter into the open air, and was not returned to and consumed with the main stream. In Youngs' meter the problem was to reunite the metered stream

with the main stream, and allow its consumption. Youngs thus had the factor of a return of the metered stream to the main stream at the pressure of the latter. It will be seen that the Westinghouse device wholly omitted these important elements of the Youngs invention, to wit: First, a meter-delivery chamber; second, the weighted diaphragm between such meter-delivery chamber and the inlet chamber; and, third, a valve between the tally meter and the meter-delivery chamber, which was controlled by said diaphragm.

The patent in suit being valid, as we hold it to be, we next inquire whether infringement exists. Such infringement is alleged to exist in the meter shown in the accompanying sketch. Although widely different in form,

## Defendants' Meter.

this meter embodies the essential features of Youngs' device, and employs them for the same functional purpose. The gas enters the inlet chamber, 10, from whence the metered stream passes by the pipe, C, to the tally meter, B. Its passage from the tally meter is through the passage, D, and is controlled by the poppet valve, W. Here the metered stream enters a closed chamber, the exit from which is controlled by the valve, S. Through this valve the metered stream enters an outlet chamber common to it and the unmetered stream. Now, it will be noted the space above the tally meter, marked "10," and the inlet chamber, also marked "10," are really one, and form the real inlet chamber of the device, since, through the pipes, C, and the spur leading therefrom upward, both portions of the

inlet chamber have a common pressure. The pressure of the inlet chamber is thus brought to bear on the lower side, and the pressure of the meter-delivery chamber on the upper side of the weighted diaphragm, U. As these varying pressures controlled the flow of gas into the latter chamber through valve W, it will be seen that a constant fall or difference of pressure between the inlet and meter-delivery chamber is maintained. We also find a weighted poppet valve is placed between the inlet and outlet chambers. It is clear that such poppet valve is but the mechanical equivalent of a weighted diaphragm controlling a valve. We find attached to and controlled by the movement of the poppet stem a proportional valve. One opening of this valve is placed between the inlet and the outlet chambers, and the other opening, s, between the meter-delivery chamber and the outlet chamber. Both are operated by the poppet valve, G, and its stem, and in such a manner as to cause a constant difference or fall of pressure respectively between the inlet and outlet chambers and the meter-delivery and outlet chambers. In other words, under different mechanical form, it embodies the substantial functional construction of Youngs' device. To say that the weighted diaphragm, U, of the latter device is but the proportional regulator of the Westinghouse patent, No. 347,673, is to lose sight of the fact that in the latter device the pressures controlling its operation were the pressures of the inlet and outlet chambers alone. They were not those of the inlet and an intermediate or meter-delivery chamber. No such intermediate chamber, with a constant fall or difference of pressure between it and the inlet chamber or between it and the outlet chamber, was used in the Westinghouse device. We are of opinion the charge of infringement is established.

J. Snowden Bell and George H. Christy, for appellant.
James K. Bakewell and Joseph C. Fraley, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. The bill charged the defendant below (here the appellant) with infringement of letters patent No. 473,544, dated April 26, 1892, and issued to Fred E. Youngs, for an improvement in proportional meters for measuring gas. In a proportional meter the fluid whose volume is to be determined is divided into two streams,—a large and a small one,—intended to bear a definite proportion to each other, so that by measuring the smaller stream in a meter of ordinary and convenient size, called a "tally meter," the total volume of the fluid drawn from the main is ascertained. Proportional meters were old and well-known appliances prior to the date of the invention of the patent in suit. The learned judge below in his opinion correctly said, "Youngs was not the first to devise a proportional meter." Furthermore, it appears from the proofs that the invention of this patent is an improvement only upon commercially successful proportional gas meters which had been, and still are, manufactured by the complainant below under one of two prior patents for proportional meters granted to this same inventor (Youngs), namely, No. 412,824 and No. 413,121, each dated October 15, 1889. Again, it appears that the complainant, although the owner of the patent in suit, is not manufacturing under it at all, but continues to manufacture and sell proportional meters exclusively under Youngs' earlier patent. It may, then, be affirmed confidently that the invention of the patent in suit is not one of a primary character. We agree, however, with the circuit court that anticipation of this particular improvement has not been shown, and that the

patent is valid. The case, we think, turns upon the question of infringement. The court below decided that question in favor of the complainant. Whether that conclusion was right we are now called on to determine.

The specification of the patent in suit states that the invention consists "in the combination of an inclosing case, an upper weighted diaphragm, a valve lever connected to and operated by the diaphragm, and the proportional valves which are connected to the lever with a chamber formed in the case, a lower weighted diaphragm, and the valve lever connected thereto and operated by the diaphragm and a tally meter, as will be more fully described hereinafter"; and the declared objects of the invention are "to provide a proportional meter in which the loss of pressure of the gas in passing through the meter is constant, without regard to changes of volume, and to insure accuracy of the proportional measurement, without regard to the friction in the tally meter." We here refer to Fig. 1 of the patent drawings exhibiting the invention, and we quote from the specification the detailed description of the apparatus:

"A represents the casing of the meter, which can be of any desired shape, size, or construction which may be preferred; and B, the tally meter, which is connected thereto at the points, C, D. The gas enters at the inlet, E, and fills the entire lower portion of the casing around the chamber, F; and while a portion of this gas passes through the tally meter. B, into the chamber, F. the other portion passes up under the upper weighted diaphragm, G, and passes through the opening, H, which is formed in the partition, I, the area of which is controlled by the valve, J. The weight placed on the diaphragm, G, is proportioned to the area of the diaphragm, so as to cause the pressure in the chamber, L, to be less than in the one, N, by a certain definite amount. This difference in pressure between the two chambers is regulated by the valve lever, P, which is connected to the weight at one end by the link, O, and to the standard, Q, at the other. To this lever, between the link, O, and the standard, Q, are connected the two valve rods, R, to which the valves, J, S, are secured, and these valves control the openings, N, T, through the partition, I. I do not limit myself to the precise construction here shown, because this arrangement of parts may be varied indefinitely without departing from the spirit of my invention. The chamber, F, is formed inside of the casing, A, and may either be of the shape here shown, or any other that may be preferred. The greater portion of the bottom of this chamber is formed by the lower weighted diaphragm, U, to which the valve lever, V, is connected. The valve, W. which is secured to this lever, regulates the flow of the gas from the tally meter, B, into the chamber, F. The pressure of the gas in the chamber, N, against the under side of the weighted diaphragm, U, serves to operate the lever, V, so that the valve, W, will only allow the gas passing from the tally meter to enter the chamber, F, with a certain regulated degree of pressure, and the pressure in this chamber, F, is a certain regulated amount less than the pressure in the chamber, N, without regard to the volume of the gas passing through the meter. The weights on the diaphragm, G, U, are so proportioned that the differences in pressure between the chamber, N, and chamber, L, are always a certain amount greater than the difference in pressure between the chamber, N, and chamber, F. This permits of making the opening, T, in the partition, I, controlled by the valve, larger than it would be made if the fall in pressure were as great from the chamber, F, to the chamber, L, as it is from chamber, N, to the chamber, L."

The patent has a single claim, which is as follows:

"In a proportional meter, the combination of an inlet chamber, an outlet chamber, a meter-delivery chamber, a tally meter, a weighted diaphragm, U,

placed between the inlet chamber and meter-delivery chamber, a valve placed between the tally meter and meter-delivery chamber, and operated by the weighted diaphragm, U, in such a manner as to cause a constant fall or difference of pressure between inlet chamber and meter-delivery chamber, a weighted diaphragm, G, placed between the inlet chamber and outlet chamber, a proportional valve, one opening of which is placed between the inlet chamber and outlet chamber, and the other opening placed between the meter-delivery chamber and the outlet chamber, and operated by the weighted diaphragm, G, in such a manner as to cause a constant difference or fall of pressure between the inlet and outlet chambers, and between the meter-delivery and outlet chambers, substantially as described."

This patent does not cover any of the separate parts of the proportional meter. The claim is for the combination only of the described and specified constituents. One of the parts or elements of this combination is "a weighted diaphragm, G," whose construction, location, relations, and office are described and shown in the patent. The specification, as we have seen, defining the invention, refers to the diaphragm, G, in the combination thus:

"An upper weighted diaphragm, a valve lever connected to and operated by the diaphragm, and the proportional valves which are connected to the lever with a chamber formed in the case," etc.

Not only does Fig. 1 show, but the other figures (2 and 3), exhibiting modifications in mechanisms, each shows the weighted diaphragm, G, the proportional valve, with its two openings, and interposed mechanism by which the diaphragm and proportional valve are connected. The claim calls for "a weighted diaphragm, G, placed between the inlet chamber and outlet chamber," and "a proportional valve * * * operated by the weighted diaphragm, G. *. * *" It seems to us quite clear from the description, drawings, and claim of this patent that the "weighted diaphragm, G," is a distinct element of the patented combination, and that by means thereof the "proportional valve," another separate element of the combination, is operated.

We here refer to the sketch of the defendant's proportional meter. Now, the defendant has altogether dispensed with the "weighted diaphragm, G," and the mechanism connecting it with the proportional valve. He employs a poppet valve, the vertical stem of which carries an upper and lower valve (numbered 9 and 6 in the sketch), the larger one being below. This valve and its connected smaller valve are raised from their seats by pressure from the gas in the inlet chamber acting directly upon the under surface of the lower valve. Instead of operating these valves by means of a weighted diaphragm, or flexible partition having differences of pressure on its opposite sides, and moving as the result of these differences of pressure, as in the patented apparatus, the defendant, eliminating all intermediate agencies, operates the proportional valve by direct pressure. The defendant's meter does not have the weighted diaphragm, G, or any diaphragm operating or controlling the proportional valve. Nor has the defendant substituted any mechanical equivalent for the weighted diaphragm, G, performing the same office. The defendant has made a material change in the method employed in operating the proportional valve, by discarding all intermediate

actuating devices, and applying to the valve direct gas pressure. This case bears close analogy to the case of Water-Meter Co. v. Desper, 101 U. S. 332, 25 L. Ed. 1024, in which the patented combination consisted of five elements, one of which was a rotary valve, and another a crank shaft, with its pinion and cranks, by means of which rotary motion was imparted from the pistons to the valve. There the defendant discarded the crank shaft, with its appurtenances, and communicated rotary motion to the valve from the pistons by a single crank attached directly to the rotary valve, and made a part of it. The court held that the combination claimed was not infringed, although all the other elements were used in combination. Nothing in the law of patents is better settled than the rule that a claim for a combination is not infringed if any one of the described and specified elements is omitted, without the substitution of anything equivalent thereto. Water-Meter Co. v. Desper, supra; Weatherhead v. Coupe, 147 U. S. 322, 13 Sup. Ct. 312, 37 L. Ed. 188; Wright v. Yuengling, 155 U. S. 47, 15 Sup. Ct. 1, 39 L. Ed. 64.

We are not able to accept the suggestion made by the counsel of the appellee that the change effected by the defendant is merely the consolidation into one piece of a valve and a diaphragm which in the patent are shown as connected pieces, although, if such were the fact, it would not follow that infringement is made out. What the defendant has done is to exclude wholly from his meter the diaphragm, G, with its appurtenances. He has not introduced into his meter a compound device, but a single device, whose sole office is that of a valve; and this valve is operated by direct gas pressure exerted upon it. We may here add that it is clear to us that the defendant's valve could not be used in the meter described in the patent in suit, and covered by the claim, without a complete reorganization of that apparatus. It is equally evident that the diaphragm, G, and its adjuncts could not be employed in the defendant's meter. Now, noninterchangeability of parts tends strongly to negative infringement. Miller v. Manufacturing Co., 151 U. S. 186, 208, 14 Sup. Ct. 310, 38 L. Ed. 121. That the defendant's meter and the meter of the Youngs patent may effect the same result is not determinative of the question of infringement. Water-Meter Co. v. Desper, supra; Westinghouse v. Brake Co., 170 U. S. 537, 669, 18 Sup. Ct. 707, 42 L. Ed. 1136. In the latter case the court said:

"But, after all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value. * * * Under the very terms of the first and fourth claims of the Westinghouse patent, the infringing device must not only contain an auxiliary valve, or its mechanical equivalent, but it must contain the elements of the combination 'substantially as set forth.' In other words, there must not only be an auxiliary valve, but substantially such a one as is described in the patent; i. e. independent of the triple valve."

The decision in Westinghouse v. Brake Co. confirms our judgment that the court below fell into error in holding that the defendant's "poppet valve is but the mechanical equivalent of a weighted diaphragm controlling a valve."

Finally, it is possible that the real invention here was broader than the claim asked for and allowed. If that be so, however, the remedy was by reissue. The court is not at liberty by construction to expand a claim beyond the fair meaning of its terms. As we have seen, this is a claim for a combination. Its terms are explicit and clear. It needs no interpretation. It speaks for itself. The court must take the claim as it finds it. Having regard, then, to its terms, and acting upon well-settled principles, we are constrained to hold that infringement by the defendant does not appear. The decree is reversed, and the cause is remanded to the circuit court, with direction to dismiss the bill.