BARLEY et al. v. G. E. WITT & CO., Inc.

**(Circuit Court of Appeals, Ninth Circuit.   October 14, 1919.)**

No. 3247.

1. PATENTS ⬅️328—FOR OIL-BURNING SYSTEM NOT INFRINGED.
　　The Witt patent, No. 986,791, claims 1 and 2, which are for an oil-burning system, having in combination a boiler, an oil pump, and a burner, *held* not infringed by defendants' device.

2. PATENTS ⬅️243—COMBINATION PATENT FOR OIL-BURNING SYSTEM NOT INFRINGED.
　　A combination patent for an oil-burning system cannot be expanded beyond the fair meaning of the terms, and a device not operating in the same manner as the combination patent is not an infringement, where there is a substantial lack of identity between the combinations in respect to their functioning.

Appeal from the District Court of the United States for the Second Division of the Northern District of California; Frank H. Rudkin, Judge.

Suit by G. E. Witt & Co., Incorporated, against Harry Barley and Curt R. Reichel, copartners doing business under the firm name of Barley & Reichel. From an interlocutory decree for complainant, defendants appeal. Reversed, and cause remanded, with directions.

Carlos P. Griffin, of San Francisco, Cal., for appellants.

N. A. Acker, of San Francisco, Cal., for appellee.

Macleod, Calver, Copeland & Dike, of Boston, Mass. (Geo. P. Dike, of Boston, Mass., of counsel), for Mason Regulator Co., amicus curiæ.

Before GILBERT, MORROW, and HUNT. Circuit Judges.

HUNT, Circuit Judge.   From an interlocutory decree holding that letters patent No. 986,791, granted March 14, 1911, for a liquid fuel governor, are valid, and that appellants, Barley & Reichel, have infringed, this appeal was taken.   Barley & Reichel denied infringement and validity of letters patent, basing the denial as to the validity on certain public use defenses.

The claims, all of which are involved, are as follows:

1. An oil-burning system having in combination a boiler, an oil pump, a burner having a steam pipe connected with the boiler and also having an oil pipe connected with the pump, governors in the oil and steam pipes controlled by the variations of steam pressure in the boiler, said governors regulating the steam and oil feeds independently by the boiler pressure, and means for operating the oil pump, a governor regulating the oil pump adapted to respond to a decrease of boiler pressure and to admit an increased feed of steam to the oil pump, for causing an accelerated boost to the oil pump to cause it to raise the oil pressure in the oil pipe.

2. An oil-burning system, having in combination a boiler, an oil burner having oil and steam passages, an oil pump, connections between the oil pump and the oil passage of the burner, connections between the steam passage of the burner and the steam dome of the boiler, connections between the steam dome and the steam end of the pump, governors in the steam and oil passages of the burner connected with the steam dome and operable by the steam pressure therein, said governors automatically regulating the steam and oil

feeds independently by the boiler pressure, and a governor operable by the steam pressure in the dome for controlling the action of the pump.

3. An oil-burning system, having in combination a boiler, an oil burner, steam and oil pipes leading to the burner, the steam pipe connected with the dome of the boiler, an oil pump connected with said oil pipe, a pipe connecting the steam end of the pump with the steam dome, controlling valves in the steam pipe to the burner and in the steam pipe to the pump and in said oil pipe, and a diaphragm governor controlling the action of each of said valves, each of said diaphragm governors subject constantly to the absolute steam pressure in the dome whereby the said several valves are opened more or less in unison with the rise and fall of the steam pressure in the boiler, said governors automatically regulating the steam and oil feeds independently by the boiler pressure.

To illustrate the devices we append a copy of the drawing accompanying the patent, and two drawings introduced upon the trial, marked "Exhibit D" and "Exhibit E," respectively. D represents the appellee's constructed governor and E shows the governor of the appellants.

EXHIBIT D.

PATENT DRAWING.

Regulation of fire under boilers in response to changes in steam pressure in the boilers has been used for many years. Briefly, as shown by the patent to Witt, the oil is injected into the furnace by a steam-driven oil pump and is atomized by pressure of steam equal, approximately, to that of the oil. The steam required from the boiler will vary in amount from time to time. The changes in the demand for steam or in the load on the boiler produce corresponding fluctuations in pressure in the boiler, and they should be accompanied by inverse changes in the quantity of fire under the boiler. When there is a drop in pressure, the fire should be increased, and when there is a rise in pressure, the fire should be lessened. These automatic systems are operated by variations in pressure in the boiler. They respond directly to changes in the load upon the boiler, increasing or decreasing the fire as may be required.

In the Witt patent the oil is pumped from the nozzle by a pump driven by steam from the boiler, and three things require regulation simultaneously, namely, the flow of oil to the burners, the flow of steam to the burners, and the flow of steam to the oil pump. The regulator *19*, shown upon the drawing of the patent in suit, governs the flow of oil to the burners, and the regulator *15* governs the flow of steam to the burners, and the regulator *11* controls the flow of steam to the oil pump. These several governors are of a movable diaphragm type, and each is subjected on one side to the pressure of steam from the boiler and on the other to the pressure exerted by a spring; the diaphragm moving a valve in the steam or oil pipe. Witt shows two pipes, each leading from the dome of the boiler to the respective governors, so that each governor is subjected to the full boiler pressure in the dome and is immediately and directly responsive to slight changes in the pressure in the boiler. There appears to be no function performed by the pipes which lead from the steam dome to the

EXHIBIT E.

governors, other than the transmission to the governors of boiler pressure. Witt in his specifications says:

"The use of the supplemental pipe *12* with its branches is important, for the reason that this pipe and its branches, having no outlets in them, will give absolute boiler pressure on the diaphragms of the several governors which they control. If these diaphragms were acted on by steam coming through pipes, which might have other connections through which steam would be drawn from time to time, the true and absolute gauge pressure would not be transmitted to the diaphragm, because there would be more or less variation, due to drawing steam from these pipes or connections."

It is evident that Witt laid stress upon the feature of his invention that each of the three governors was subjected to absolute or direct pressure in the steam dome, so that each would respond directly and promptly to changes of pressure without being subject to variations not occurring in the steam dome of the boiler. When the pressure in the boiler drops, the three governors, *11*, *15*, and *19*, open the valves operated by them respectively, and admit more steam to the burners, more oil to the burners, and more steam to the cylinder of the oil pump, and as a result the oil pump at once speeds up and maintains the pressure in the oil supply, although the valve operated by the governor *19* has opened and thereby allowed a freer flow to the burners. On the other hand, in case the boiler pressure arises, a similar action in reverse way would take place. Witt says in his specifications and claims:

"If the steam pressure in the boiler falls, then the governor *11* will open up and let more steam feed to the pump, so as to accelerate the action of the latter and boost the oil pressure even above the pressure under which it may be normally set at 65 pounds. This boosting of the oil pressure giving an enhanced oil feed to the burner synchronously with the additional steam feed thereto, due to the opening action of the governor *15*. It is to be observed that not only are the oil and steam flow controlled direct by the boiler pressure by means of the governors *15* and *19*, but the oil feed is further made more sensitive and more closely regulated to the desired boiler pressure by the desired boost given to the oil feed by the pump at the very instant when more oil is most desired."

Further on he says:

"One of the chief features of this invention is the boost given to the pump, so as temporarily to raise the oil pressure in the line *6*, and so increase the fire when more fire is needed. The amount of this boost is controlled by the governor *11*."

From the disclosures in the patent, these essential features of Witt's invention stand forth: The idea of three governors, controlling, respectively, the oil and steam feeds to the burners and the steam supply to the oil pump, each of the governors being subject to the direct steam pressure from the boiler, and the further idea of giving an accelerated boost to the oil pump to cause it to respond the very instant when more oil is desired.

The idea of giving an accelerated boost to the oil pump, to cause it to respond the instant more oil is desired, is the result of the idea of having the three governors controlling the oil and steam feeds, as stated, because the accelerated boost is the result of the direct connection of the oil pump governor with the dome of the boiler.

Turning to the file wrapper, we find that the Patent Office cited, as against the application of Witt, patent No. 886,466, May 5, 1908, granted to Atchison & Weymouth, for a system of regulation for oil-burning plants. The Atchison patent shows a system in which the throttle valve of the oil pump is controlled by a governor connected to the steam pipe, which also supplies the oil pump with steam, and also shows the governor controlling the steam supply to the burners; the governor being operated by pressure in the oil main. Witt argued to the Patent Office in favor of the allowance of the claims of his patent, in reference to the Atchison patent, as follows:

261 F.—6

"The reason for this is that in applicant's system the boiler pressure acts instantly on the pump, as well as on the oil and steam feeds, so that the pump responds almost instantly to any demand put upon it."

He also pointed out that he regulates the steam and oil feeds independently "by the boiler pressure, and not by the variation in any oil pipe." He also said:

"Further, in the Atchison system the regulation of steam is indirect through the oil, and the oil is controlled by the governor on the pump. The pump has to act before the burner can act, and consequently the steam pressure can run way down or way up, beyond desired limit, before the burner will respond."

It appears that Witt was obliged to amend claim 1, and that he did amend it by inserting a phrase that he used a governor regulating the oil pump adapted to respond to a decrease of boiler pressure and to admit an increased feed of steam to the oil pump for causing an accelerated boost to the oil pump to cause it to raise the oil pressure in the oil pipe. It seems, therefore, that the file wrapper indicates that Witt laid emphasis on his system as one where the boiler pressure acts instantly on the pump, so that the pump responds instantly to any demand put upon it. Instant response of the oil pump to any variations in boiler pressure is the idea underlying the patent which Witt applied for, and it is the instant response that is due to the direct connection between the dome of the boiler and the governor controlling the oil pump throttle valve.

Having now gained an understanding of the patent involved, let us look at the system used by Witt, which is conceded to present a changed construction. The system has three regulators or governors, two of which control the steam in the burners and the oil in the burners, respectively, both regulators being supplied by steam from the steam dome. The third regulator or governor controls the throttle valve of the oil pump, and is connected to the air chamber of the oil pump, and is therefore operated by oil pressure, and not by steam pressure. A comparison between the installed system of the appellants and the system installed in the Fuller plant in San Francisco shows that in both there is a pipe leading from the pump throttle governor to the pump air chamber, so that pressure in the oil main controls the speed of the pump. The fundamental difference between the system described in the patent in suit and the system of the appellants is that in the system described in the patent the oil pump governor responds instantly to every fluctuation in boiler pressure, and thereby may produce a sudden fluctuation in oil pressure, reflecting corresponding fluctuations in boiler pressure, while in the appellants' system the oil pump governor maintains a constant pressure in the oil main, because the speed of the pump is controlled by the pressure in the oil main. Changes in boiler pressure are thus not directly reflected, and there may be material variations in the speed of the pump, corresponding to the suddenness of the variations in boiler pressure.

Appellants use this illustration: If it is desired to maintain a pressure of 100 pounds on the boiler and 65 in the oil line at the burner, under the Witt patent the oil pump governor would be set at 100

pounds, and would move with every fluctuation of boiler pressure above or below this figure. In case the boiler pressure should run up to 105 pounds, the steam pump might be entirely stopped, while, if the pressure should drop suddenly, the steam pump would be started violently, and run at great speed. On the other hand, in appellants' system, the oil pump governor would be set at the oil pressure to be maintained, say 65 pounds, and would not be set at as high a figure as in the Witt system, described in the patent. The governor in the oil pressure line will be kept at the pressure of practically 65 pounds, and the pump will run steadily under a uniform pressure sufficient to maintain the boiler pressure at the desired point. The advantage of this is the reduction of the probability of violent changes in the speed of the oil pump, and as a result the operation of the oil pump will be steadier and smoother than in the Witt patent described; or it can be said that under the patent in suit Witt has an oil pump governor set at boiler pressure and produces violent changes in the speed of the pump in direct response to changes in boiler pressure, while the appellants' oil pump governor will be set at the oil line pressure, which ordinarily will be lower than that of the boiler pressure, and the pump will not respond directly to boiler pressure, but will endeavor to maintain an unvarying pressure in the oil line, and therefore will produce a more regular operation of the oil pump. The point appears to be well taken that in the patent in suit, when the burner becomes clogged, the oil pump will be speeded up as the boiler pressure drops, and the obstruction will finally be blown out, or the oil pump damaged, or the pipe will burst, because the continued drop in boiler pressure will tend to run the pump faster and faster. But in the appellants' system the clogging of the burner nozzle will produce an immediate increase in oil pressure, and thus will check the oil pump, inasmuch as the oil pump governor attempts to maintain a constant pressure in the oil line. Boiler pressure will drop, without any response from the oil pump, but there will be no damage to the system.

Again, Witt's system, as described in the patent, permits fluctuations in the oil pressure at the burners, preserving only uniformity of boiler pressure, while the appellants' system preserves substantially uniformity of oil pressure at the burners, yet permits some fluctuations of boiler pressure. Thus it appears that the Barley & Reichel construction does not employ the construction of the patent in suit, nor it is alike in its mode of operation.

[1] Our conclusions are that: Claim 1 is not infringed, for the reason that the Barley & Reichel oil pump governor is not operated by the boiler pressure, and the system they used does not operate to give an accelerated boost to the oil pump. There is no infringement of claim 2, for the reason that the oil pump governor of the burner of the Barley & Reichel system is operable by oil pressure in the oil main, and not by steam pressure in the dome. There is no infringement of claim 3, because in appellants' system each of the three diaphragm governors is not subject "constantly to absolute steam pressure in the dome."

Witt clearly has abandoned the system described in his patent for the construction shown in Exhibit D, and, as already pointed out, the Barley & Reichel system is materially different from that described in the patent.

It is argued by Witt that there is no distinction between the form of connection for carrying out his invention shown in the drawings and the installed device by reason of the changes made in the constructed means for producing the variable steam pressure relative to the governor controlling the pumping action of the oil supply pump, and that it is not material whether the controlling pressure is produced by means of pipe $12$, as disclosed in the drawings of the letters patent, or whether the same is produced by means of an increase or decrease of pressure within the chamber $L$ of the Witt installed construction. This is said to be so because the increase of pressure within the chamber $L$ is said to be solely occasioned and produced by the increase or decrease of steam pressure through the direct valve-controlled pipe connection $C$ extended from the dome $B$ to the pump $M$; but as we study the different constructions there is an essential difference between the installed system and that of the patent in suit.

Witnesses testified that the Witt patent, the construction in the Fuller plant, the actual Witt construction, and the appellants' construction perform the same function; but they were obliged to admit that there is a difference in the mechanism between the construction of the appellants and the Witt patent claims and drawings. The conclusions that, notwithstanding such differences, the construction of the appellants is the same as in the patent, are not warranted. The case is one where the patent must be narrowed, considering the extensive state of the art shown in the records of the Patent Office and the system called the Fuller installation. Without attempting to describe in detail the Fuller system, it is sufficient to say that it is more nearly like the system of the appellee than it is like that of the patent in suit, and it is well established that it was in commercial use for a long time before Witt invented his device. In the Fuller installation there are burners having steam atomizers like those in the Witt patent; there is an oil pump supplying oil to the burners; there is a throttle valve controlling the supply of steam to the oil pump and controlling the speed of the oil pump; there is a diaphragm governor controlling the oil pump throttle valve and a regulator which regulates the steam and oil feeds by the boiler pressure. In all these respects the Fuller installation is the same as that shown in the patent in suit. It is true that the oil pump throttle valve governor of the Fuller system is controlled by the oil pressure, and not by the absolute steam pressure in the boiler, and that is also true of the system of Witt as installed. It may also be true that the oil and steam valves at the burners of the Fuller plant are not regulated independently. It would seem, however, that slight mechanical experience was only requisite to supply a separate regulator for each valve, if it should be desirable so to do.

[2] We are unable to expand the claims of the patent in question beyond the fair meaning of their terms, and we cannot find that identity of mechanical elements, as well as identity of function, necessary to

sustain the charge of infringement. Notwithstanding the fact that there are the same mechanical elements present in the device of the patent in suit as in the construction of appellants, the manner of operation described in the patent claims determines whether there has been infringement; and, as we understand it, appellants do not use the manner of operation described by the patent claims.

Believing, therefore, that there is a lack of substantial identity between the combinations in respect to their capacity to do the same work in substantially the same way, appellants are not shown to infringe. Westinghouse Co. v. Boyden Power Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136; Pittsburg Meter Co. v. Pittsburg Supply Co., 109 Fed. 644, 48 C. C. A. 580; Westinghouse Air Brake Co. v. New York Air Brake Co., 119 Fed. 874, 56 C. C. A. 404; Imperial, etc., Co. v. Crown Cork & Seal Co., 139 Fed. 312, 71 C. C. A. 442; Thatcher v. Transit Co. (D. C.) 228 Fed. 905.

The decree is reversed, and the cause is remanded, with directions to dismiss the complaint, at the cost of the appellee herein, plaintiff below.

Reversed.