## AMERICAN CHEMICAL PAINT CO. v. J. G. BRILL CO.*
### No. 6540.

Circuit Court of Appeals, Third Circuit.
Oct. 28, 1938.

Synnestvedt & Lechner, of Philadelphia, Pa. (Arthur Synnestvedt and Harvey Lechner, both of Philadelphia, Pa., of counsel), for appellant.

Paul & Paul, of Philadelphia, Pa., and Harness, Dickey & Pierce, of Detroit, Mich. (Wallace D. Newcomb, of Philadelphia, Pa., Donald G. Lambert and Arthur

*Rehearing denied Dec. 12, 1938.

W. Dickey, both of Detroit, Mich., and Henry N. Paul, of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON and BIGGS, Circuit Judges, and DICKINSON, District Judge.

BIGGS, Circuit Judge.

The appellant, American Chemical Paint Company, as the assignee of United States Patent No. 1,398,507, issued November 29, 1921 to James H. Gravell, brought suit against J. G. Brill Company, the appellee, alleging that the latter company by the use of a cleansing solution manufactured by the Neilson Chemical Company in accordance with the formula disclosed in United States Patent No. 1,935,911 issued upon November 21, 1933 to Howard R. Neilson, infringed the Gravell patent referred to. The learned District Judge held that Gravell's patent was not infringed by the appellee's use of Neilson's cleaning fluid and from the decree so adjudicating the issue between the parties the appeal at bar is taken.

The issue presented is clear in law but not in fact. The court below was compelled to determine from conflicting expert testimony the nature of butyl cellosolve chemically described as monobutyl ether of ethylene glycol. The appeal presents the same issue for our determination.

In order to state the facts which we consider essential for an understanding of the questions presented we say that Gravell by the patent at bar patented both a method and a means of cleaning metal of oil, rust and dirt preparatory to painting it. Gravell's process is adapted to cleaning automobile bodies and similar steel objects which come frequently to the painting stand with spots of rust upon the metal and treated with slush oil or grease.

In his patent specification Gravell states: "The principal objects of the invention are, first, to provide a method and an admixture or composition for cleaning steel which will be effective even when the metal is both oily and rusty; and second, to hasten the cleaning action of an acid in cases where the rust on the surface of the metal is excessive or where the surface is unduly oily." He goes on to state: "In order to accomplish this I combine or admix with the acid fusel oil which is a solvent of mineral oil and is peculiarly adapted for the production of commercially practical and improved industrial results. In such an admixture, however, the fusel oil tends to separate from the acid (or vice versa) and although the admixture works satisfactorily in the hands of an expert workman it cannot be used to advantage where care is not exercised, and in order to overcome this difficulty I add to the admixture an agent in which it is miscible, such, for instance, as alcohol or acetone, making a homogeneous fluid." Gravell's specification says further: "My admixture, therefore, primarily consists of an acid and fusel oil and to this may be added, to improve it, a liquid capable of dissolving the two, and the admixture may still be improved in its rapidity of action by the addition of water."[1]

The word "miscible" used in the patent and in the art simply means capable of being mixed. What Gravell has stated therefore is simply that if fusel oil be mixed with the acid, the two ingredients will possess the tendency to separate in the solution into distinct parts, one part containing the acid, the other consisting of the fusel oil. Such separation presents difficulties in applying the solution to metal which must be overcome by skilled workmen. To prevent this separation of the ingredients of the solution Gravell adds an alcohol or an acetone which serves as a mixing agent, permitting the acid and the fusel oil to mix, thus creating a homogeneous solution. The evidence shows that in cleansing metal by the Gravell formula ethyl alcohol was used as the mixing agent for the solution and that butyl alcohol frequently took the place of fusel oil. The evidence also shows that fusel oil or its constituent butyl alcohol also possesses the valuable characteristic of decreasing the surface tension of the mixture correspondingly increasing its wetting qualities to make it a more efficient cleanser.

"Metalprep", the composition used by the appellee, manufactured pursuant to the formula of the Neilson patent, is made by mixing phosphoric acid (sometimes called orthophosphoric acid) with water, butyl cellosolve, and a small amount of saponin and oleic acid. The use of saponin and

---

[1] Gravell sets forth as the preferred formula for his mixture an 85% solution of phosphoric acid, 1 part; alcohol, 1 part; water, 1.5 parts; and fusel oil .17 parts.

oleic acid in the Neilson formula is relatively unimportant and the effects of such use need not be considered here. Butyl cellosolve is a most excellent wetting agent. It is entirely miscible in water. It fulfills the very important function of keeping the Neilson solution homogeneous. Its function in the Neilson formula is substantially like that of the (ethyl) alcohol used in the formula under the Gravell patent. It performs the function of the fusel oil as well.

If we apprehend correctly the contentions of the appellant they are to the effect that the use of butyl cellosolve under the Neilson formula is substantially identical with the use of fusel oil with an alcohol (shown by the evidence to be ethyl alcohol) to render the solution homogeneous, and therefore Neilson's formula infringes Gravell's patent. The appellant further contends, however, that if the ingredients of the two formulæ are not identical none the less they are equivalents and for this reason Gravell's patent is infringed.

Claims 1 and 3 of Gravell's patent are for a method of cleaning metal by subjecting it to the solvent action of an etching acid in the presence of fusel oil. Claim 5 is for "A cleaning agent for metals consisting of an admixture of an etching acid and fusel oil." Since the use of an alcohol is nowhere referred to either directly or indirectly in these three claims we will exclude them from further consideration. Claims 2 and 4 are process claims for a method of cleaning metal by means of an acid, fusel oil, water and *a fluid in which these ingredients are miscible*. Claims 6 and 7 are for a cleaning agent consisting of an admixture of phosphoric acid and fusel oil *in a solution in which the ingredients are miscible*. The description of the admixture contained in the italicized portion of the sentences above, construed broadly, would include an alcohol such as ethyl alcohol as the mixing agent to render the solution homogeneous. These claims, however, may not be construed more broadly than indicated in the light of Gravell's specification. In claim 8 Gravell specifically refers to alcohol as a part of the formula. Claims 9 and 10 respectively claim a method of cleaning

metal by employing an agent consisting of a metal etching acid and "a monohydric alcohol of a higher boiling point than ethyl alcohol", and such an agent itself.

Is Neilson's use of butyl cellosolve within the claims of Gravell's patent, assuming that we construe claims 2, 4, 6, 7, and 8 to read upon the use of fusel oil with an alcohol such as ethyl alcohol? Fusel oil ordinarily consists of amyl alcohols with butyl alcohol in a large proportion, with propyl alcohol and certain higher alcohols in small proportion. Butyl cellosolve is made by combining one alcohol with another through an ether group. Its chemical formula is $CH_2 (OH) CH_2(O) C_4H_9$. It is apparent that it is an ether since the (O) atom serves as the peg from which the combination depends and such is the hall mark of the ether. It is also apparent that if butyl alcohol and ethyl alcohol are combined and the hydrogen ends are eliminated the combination results in butyl cellosolve as indicated by the formula set out below, the hydrogen ends being as indicated within the oval line.[2] But the fact remains manifest from their very formulæ that butyl cellosolve is not the same chemical combination as fusel oil with ethyl alcohol or another alcohol.

Can butyl cellosolve be deemed to be within the definition of claims 9 and 10 of Gravell's patent as "* * * a monohydric alcohol of a higher boiling point than ethyl alcohol"? Alcohols may be monohydric, dihydric, trihydric, and so forth, depending upon the number of hydroxol (OH) groups which they contain. From the formula of butyl cellosolve it is obvious that if it be an alcohol it is monohydric since it possesses a single hydroxol. There is no question that it possesses a higher boiling point than ethyl alcohol. But is it an alcohol at all?

Dr. James Conant of Harvard, in his work on "The Chemistry of Organic Compounds", states that butyl cellosolve is at the same time both an alcohol and an ether. He describes the compound as the monobutyl ether of ethylene glycol. Dr. V. Von Richter in his work, "Organic Chemistry", translated by P. E. Speilman, 4th Impression, 1929, states in reference to

2 Butyl Alcohol     Ethyl Alcohol            Butyl cellosolve

ethylene glycol, "All the monocompounds[3] also exhibit the character of monohydric alcohols." Dr. Floyd Bartell of the University of Michigan stated that butyl cellosolve was an ether having the property of an alcohol. Dr. Wallace Murray of the Massachusetts Institute of Technology described butyl cellosolve as an etherified alcohol. Dr. Everett Wallis of Princeton testified that butyl cellosolve possessed some of the properties of alcohol. Mr. Alfred Douty, the chief chemist for the appellant, described butyl cellosolve as being both an alcohol and an ether—"two things in one." The developer and chief producer of butyl cellosolve, a corporation with a large chemical staff, classifies it in its catalog as an "Alcohol-Ether".

The learned District Judge stated in his opinion as follows: "My conclusion reached after the best study which I could give to the highly technical testimony is that butyl cellosolve is a separate and distinct chemical compound, not properly falling within the scientific definition of either an alcohol or an ether. Taken in connection with the patent specification, I reach the further conclusion that it is not covered by the descriptive term, 'monohydric alcohol of a higher boiling point than ethyl alcohol' of claims 9 and 10."

In these conclusions of the learned trial judge we concur. We think that we must hold that butyl cellosolve is in fact a chemical hybrid which may be described strictly as neither alcohol nor ether, possessing some of the characteristics of both but also possessing characteristics of neither alcohol nor ether. As Judge Kirkpatrick stated, it does not come within the scientific definition of either an alcohol or an ether.

The appellant lays emphasis upon the identity of properties of butyl cellosolve with those of fusel oil used in conjunction with ethyl alcohol, attempting to rely upon the doctrine of equivalents. If Gravell's patent were a pioneer patent this question might cause us serious concern. It is not a pioneer patent, however, but is on the contrary a patent issued late in the art of preparing metal for painting. Alcohols, including ethyl alcohols, have served as oil solvents for years and combinations of alcohol with phosphoric acid were early patented for the specific purposes covered by the Gravell patent. See Feidt's United States Patents Nos. 1,109,-670 and 1,119,781, of 1914.

We think that the testimony establishes the fact that cellosolve, though known to chemistry at the time of Gravell's patent, was known principally as a laboratory curiosity until about 1925. Experimental work in respect to cellosolve commenced in the Mellon Institute in 1923. We deem it to be the law that when the commercial utility of a chemical compound has not become generally apparent and is unknown to the patentee until after the issuance of a patent, it is not the equivalent of substances or materials described in that patent in general terms or by broad classifications. Gill v. Wells, 22 Wall. 1, 22 L.Ed. 699; Fuller v. Yentzer, 94 U.S. 288, 296, 24 L.Ed. 103; Barley v. G. E. Witt & Co., 9 Cir., 261 F. 77; General Mfg. Corp. v. Gray, D.C., 48 F.2d 602. The appellant therefore may not sustain its charge of infringement of the Gravell patent upon the doctrine of equivalents.

The decree of the court below is affirmed.

---

[3] So called, to distinguish them from the di-compounds and tri-compounds, viz., compounds containing more than one hydroxol.